OPINION
{¶ 1} Defendant-Appellant Cordell Hicks ("Hicks") appeals from the May 30, 2007 Journal Entry of Sentence and the August 3, 2007 Journal Entry of Sentence of the Court of Common Pleas, Union County, Ohio.
 {¶ 2} This matter stems from a series of different events occurring in Union County, Ohio. Sometime between June 30, 2005 and August 28, 2005 a credit card was stolen from Clark Wieland. Clark's daughter Jackie was an acquaintance of Hicks's and Hicks had been at Jackie's house on numerous occasions. At some point during this time period, Hicks obtained Clark's credit card without Clark's permission. Between August 28, 2005 and September 19, 2005 Wieland's credit card was used to order items over the internet from Hicks's personal computer at Hicks's home. At some point Hicks disposed of the credit card by throwing it into Mill Creek but before doing so, wrote down the credit card number and three-digit identification number on the back of the credit card.
 {¶ 3} On January 15, 2006 Hicks spent the night at an Amerihost Inn hotel, located in Marysville, Ohio with several other people, many of whom were *Page 3 
under the age of 18, and many of whom smoked marijuana. While in the hotel room that evening, Hicks had sexual contact with Stacy Helms, who was under 13 years of age. Additionally, on or about March 7, 2006, Hicks engaged in sexual conduct with another who was older than 13 years of age but less than sixteen years of age.
 {¶ 4} On January 31, 2007 a Union County Grand Jury returned an indictment charging Hicks with the following ten felony counts: Count I, Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; Count II, Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree; Count III, Corrupting Another with Drugs in violation of R.C. 2925.02(A)(4)(a)(C)(3), a felony of the fourth degree; Count IV, Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04(A)(1), a felony of the fourth degree; Count V, Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04(A)(1), a felony of the fourth degree; Count VI, Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04(A)(1), a felony of the fourth degree; Count VII, Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04(A)(1), a felony of the fourth degree; Count VIII, Theft in violation of R.C. 2913.02(A)(1)(B)(2), a felony of the fifth degree, Count IX, Receiving Stolen Property in violation of R.C. 2913.51(A)(C), a felony of the fifth degree, and *Page 4 
Count X, Tampering with Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree.
 {¶ 5} On February 2, 2007 Hicks appeared for his arraignment and entered a plea of not guilty to all counts contained in the indictment. On February 15, 2007 the State filed a Bill of Particulars. On March 7, 2007 Hicks filed a motion for separate trials. On April 5, 2007 the trial court issued a Hearing Notice which effectively granted Hicks's motion for separate trials, scheduled Counts I, II, III, IV, V, VI, and VII for a jury trial on May 24 and 25, 2007, and scheduled Counts VIII, IX, and X for a jury trial on May 29, 2007.
 {¶ 6} On April 6, 2007 Hicks filed a motion to dismiss Counts I, II, and III of the indictment on grounds of double jeopardy. Specifically, Hicks alleged that it was a constitutional violation to try him for the same facts for which he was previously convicted in juvenile court. On April 30, 2007 the trial court issued a Journal Entry overruling Hicks's motion to dismiss Counts I, II, and III of the indictment. On May 22, 2007 the trial court issued a Journal Entry continuing the jury trial on Counts I through VII set for May 24, 2007 to July 9 and 10, 2007.
 {¶ 7} On May 29, 2007 this matter proceeded to a one day jury trial on Counts VIII (Theft), IX (Receiving Stolen Property), and X (Tampering with Evidence). At the end of the State's case in chief, Hicks moved for a Criminal Rule 29 motion for acquittal. The court overruled Hicks's motion and the matter *Page 5 
proceeded to Hicks's case in chief. However, Hicks declined to present any evidence on his behalf and renewed his Crim.R 29 motion which the court overruled.
 {¶ 8} At the close of all the evidence, the jury found Hicks guilty of Count VIII, Theft, in violation of R.C. 2913.02(A)(1), (B)(2), a felony of the fifth degree, guilty of Count IX, Receiving Stolen Property, in violation of R.C. 2913.51(A)(C), a felony of the fifth degree, and Count X, Tampering with Evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. This matter proceeded immediately to sentencing whereupon the trial court determined that the Theft charge and Receiving Stolen Property charge were allied offenses of similar import and should be merged into one sentence. The trial court sentenced Hicks to a prison term of 10 months on the Receiving Stolen Property charge (Count IX) and sentenced Hicks to a prison term of 2 years on the Tampering with Evidence charge (Count X), with the sentences to be served consecutively. The trial court granted Hicks credit for 118 days already served. (See also May 30, 2007 Journal Entry of Sentence).
 {¶ 9} On June 15, 2007 Hicks filed a timely notice of appeal of the May 30, 2007 Journal Entry of Sentence (addressing Counts VIII, IX, and X of the indictment). This appeal was assigned Case No. 14-07-26. *Page 6 
 {¶ 10} Prior to the start of the July 9, 2007 jury trial on Counts I through VII of the indictment, Hicks changed his plea from not guilty to guilty on Counts IV, V, VI, and VII (each charging Hicks with Unlawful Sexual Conduct with a Minor in violation of R.C. 2907.04(A)(1)). The trial court accepted Hicks's change of plea and this matter proceeded to a jury trial on Counts I, II and III. (See also July 9, 2007 Entry Withdrawing Plea of Not Guilty, Entering Plea of Guilty). At the close of all the evidence the jury found Hicks not guilty of Count I, Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. However, the jury found Hicks guilty of Count II, Gross Sexual Imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree and Count III, Corrupting Another with Drugs in violation of R.C. 2925.02(A)(4)(a), (c)3), a felony of the fourth degree.
 {¶ 11} On August 3, 2007 the trial court conducted a sexual offender hearing and sentencing hearing. The court found that Hicks had been found guilty and convicted of four counts of Unlawful Sexual Conduct with a Minor and one count of Gross Sexual Imposition, and gave Hicks notice of the duty to register as a sex offender/child victim offender pursuant to R.C. 2950.04 as a sexually oriented offender, Tier II. (See also August 3, 2007 Judgment Entry and Notice of Duties to Register as an Offender of a Sexually Oriented or Child-Victim Offense). *Page 7 
 {¶ 12} The trial court immediately proceeded to Hicks's sentencing hearing whereupon the court sentenced Hicks to a prison term of two years on the Gross Sexual Imposition charge (Count II), and a prison term of one year on the Corrupting Another with Drugs charge (Count III) to be served consecutively. The trial court also sentenced Hicks to a prison term of one year for the charges of Unlawful Sexual Conduct with a Minor (Counts IV, V, VI, and VII) to be served concurrently to one another and consecutively to Counts II and III. The sentences for Counts II, III, IV, V, VI, and VII were ordered to be served consecutive to the sentences previously imposed on May 29, 2007 for counts IX and X. (See also August 3, 2007 Journal Entry of Sentence).
 {¶ 13} On August 14, 2007 Hicks filed a timely notice of appeal of the August 3, 2007 Journal Entry of Sentence (addressing Counts II through VII). This appeal was assigned Case No. 14-07-31. On August 27, 2007 this court ordered that Hicks's two appellate cases be consolidated under Case No. 14-07-31.
 {¶ 14} Hicks now appeals, asserting three assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO DISMISS BASED ON DOUBLE JEOPARDY.
 ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S CRIMINAL RULE 29 MOTION AS TO THE *Page 8 TAMPERING WITH EVIDENCE, THEFT, AND RECEIVING STOLEN PROPERTY CHARGES AND THE CONVICTIONS SHOULD BE REVERSED.
 ASSIGNMENT OF ERROR NO. 3 THE TRIAL COURT ERRED WHEN IT ALLOWED THE ENTIRE GRAND JURY TRANSCRIPT OF STACEY HELMS' TESTIMONY TO GO BACK TO THE JURY, RESULTING IN PREJUDICE TO APPELLANT BY ALLOWING THE JURY TO REVIEW TESTIMONY THAT WAS NOT INTRODUCED INTO EVIDENCE REGARDING THE CORRUPTION OF A MINOR WITH DRUGS COUNTS.
 {¶ 15} Prior to addressing Hicks's assignments of error, we note that the Appellate Rules state: "if an appellee fails to file his brief within the time provided by these rules, or within the time as extended, he will not be heard at oral argument * * * and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App. R. 18(C); State v.Young, 3rd Dist. No. 13-03-52, 2004-Ohio-540. In the instant case the State failed to submit a timely brief to this court. Accordingly, we elect to accept the statement of facts and issues as presented by Hicks, the appellant, as correct pursuant to App. R. 18(C).
 Assignment of Error No. 1 {¶ 16} In his first assignment of error, Hicks contends that the trial court erred when it failed to grant his motion to dismiss Count I (Gross Sexual *Page 9 
Imposition), Count II (Gross Sexual Imposition), and Count III (Corrupting Another with Drugs) of the indictment on grounds of double jeopardy.
 {¶ 17} As the relevant facts of this case are not in dispute, we will review the trial court's decision denying Hicks's motion to dismiss under a de novo standard of review. See State v. Collins, 12th Dist. No. CA2007-01-010, 2007-Ohio-5392 citingState v. Benton (2000), 136 Ohio App.3d 801, 805, 737 N.E.2d 1046.
 {¶ 18} The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that "[n]o person shall be subject to the same offense to be twice put in jeopardy of life or limb." The United States Constitution's protections against double jeopardy have been incorporated against the states through the Fourteenth Amendment.State v. Sapariti (1997), 118 Ohio App.3d 1, 3-4, 691 N.E.2d 1064 citingBenton v. Maryland (1969), 395 U.S. 784, 786, 89 S.Ct. 2056, 2058,23 L.Ed.2d 707, 711. Similarly, Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense."
 {¶ 19} To determine if a prior conviction is a bar to a subsequent prosecution, a court applies the test set forth in Blockburger v.United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. As stated inBlockburger:
 The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the *Page 10 test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. * * * A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.
Id. at 304.[1]
 {¶ 20} Additionally, in State v. Best (1975), 42 Ohio St.2d 530,330 N.E.2d 421, the Supreme Court of Ohio set forth four factors to consider when reviewing claims of double jeopardy and found that to sustain a plea for former jeopardy, it must appear: (1) That there was a former prosecution in the same state for the same offense; (2) that the same person was in jeopardy on the first prosecution; (3) that the parties are identical in the two prosecutions; and (4) that the particular offense, on the prosecution of which the jeopardy attached, was such an offense as to constitute a bar. Id. at 533.
 {¶ 21} "If application of the Blockburger test reveals that the offenses have identical statutory elements or one is a lesser included offense of the other, the subsequent prosecution is barred." State v.Tolbert (1991), 60 Ohio St.3d 89, *Page 11 573 N.E.2d 617, at paragraph one of the syllabus. An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. State v.Deem (1988), 40 Ohio St.3d 205, 209, 533 N.E.2d 294. However, "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." United States v. Felix (1992), 503 U.S. 378, 386,112 S.Ct. 1377, 118 L.Ed.2d 25.
 {¶ 22} In the present case, Hicks was charged in the Union County Juvenile Court with one count of Contributing to the Unruliness or Delinquency of a Minor in violation of R.C. 2919.24(A), a misdemeanor of the first degree. On June 1, 2006 Hicks entered a plea of guilty to this charge and was found guilty by the juvenile court. R.C. 2919.24(A) provides, in relevant part, as follows:
 (A) No person, including a parent, guardian, or other custodian of a child, shall do any of the following:
 Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2152.02 of the Revised Code;
 Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code. *Page 12 
 {¶ 23} On January 31, 2007 a Union County Grand Jury returned an indictment charging Hicks, in relevant part, with two counts of Gross Sexual Imposition ("GSI") in violation of R.C. 2907.05(A)(4), both felonies of the third degree.[2] R.C. 2907.05(A)(4) provides as follows:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more persons to have sexual contact when any of the following applies:
 * * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 {¶ 24} The January 31, 2007 indictment also charged Hicks with one count of Corrupting Another with Drugs in violation of R.C. 2925.02(A)(4)(a), (C)(3), a felony of the fourth degree. R.C. 2925.02
provides, in relevant part, as follows:
 (A) No person shall knowingly do any of the following:
 * * *
 (4) By any means, do any of the following:
 (a) Furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard;
 {¶ 25} In his first assignment of error, Hicks alleges that his prosecution for *Page 13 
GSI and Corrupting Another with Drugs in the Union County Court of Common Pleas is barred by double jeopardy because he previously pled guilty to (in the Union Count Juvenile Court) and was found guilty of Contributing to the Unruliness or Delinquency of a Minor based upon the same course of conduct.
 {¶ 26} Our examination of the statutory elements of Contributing to the Unruliness or Delinquency of a Minor within the context of theDeem test reveals that this charge is not a "lesser included offense" to either GSI or Corrupting Another with Drugs under the second prong ofDeem. To be a lesser included offense of another under the second prong of Deem requires that "the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed." Deem, 40 Ohio St.3d 205 at 209. Our review of the statutory language of these three offenses reveals that both GSI and Corrupting Another with Drugs can be committed without the commission of Contributing to the Unruliness or Delinquency of a Minor.
 {¶ 27} Furthermore, we note that there is no factual record presently before this court regarding Hicks's juvenile court case to show the evidentiary basis for Hicks's conviction of Contributing to the Unruliness or Delinquency of a Minor. Without such a record this court cannot determine the factual basis for the Contributing to the Unruliness or Delinquency of a Minor charge that Hicks pled guilty to. See State v. Wagerman, 12th Dist. No. CA-2006-05-054,2007-Ohio-2299. *Page 14 
As a result, it is unclear whether Hicks was subsequently charged for the same acts or offenses and accordingly, whether the subsequent prosecution was barred by principles of double jeopardy.
 {¶ 28} Based on the foregoing, we find that both GSI and Corrupting Another with Drugs in this case are separate and distinct offenses from Contributing to the Unruliness or Delinquency of a Minor. Additionally, we find that Contributing to the Unruliness or Delinquency of a Minor is not a lesser included offense of either GSI or Corrupting Another with Drugs. Accordingly, Hicks's charges of GSI and Corrupting Another with Drugs in the Union County Court of Common Pleas were not barred by his previous conviction for Contributing to the Unruliness or Delinquency of a Minor in Juvenile Court on this basis.
 {¶ 29} However, although not specifically enumerated in the first assignment of error, we must also address Hicks's allegations that his prosecution in the Union County Court of Common Pleas is barred by double jeopardy because he was already prosecuted for the samecourse of conduct in the Union County Juvenile Court. Specifically, in his brief to this court, Hicks notes that at the July 9-10, 2007 jury trial Detective Seeberg of the Marysville Police Department testified that the "particular incident which was January 15, 2006" was also the *Page 15 
basis for the complaint filed in juvenile court on the charge on Contributing to the Delinquency or Unruliness of a Minor.
 {¶ 30} Accordingly, we must address constitutional considerations to determine whether double jeopardy requires that Hicks be prosecuted in only one jurisdiction for the entire course of conduct.
 {¶ 31} In United States v. Dixon (1993), 509 U.S. 688, 113 S.Ct. 2849,125 L.Ed.2d 556, the United States Supreme Court overturned the "same conduct" rule contained in Grady v. Corbin (1990), 495 U.S. 508,110 S.Ct 2084, 109 L.Ed.2d 548.[3] State v. Wagerman, 2007-Ohio-2299
at ¶ 29. In Dixon, the United States Supreme Court held that "[the government] is entirely free to bring [its prosecutions] separately, and can win convictions in both" as long as the separate prosecutions do not violate Blockburger. Id. citing Dixon, 509 U.S. 688 at 703. The court also found that the "same conduct rule" contained in Grady "lacks constitutional roots" and is "wholly inconsistent with earlier Supreme Court precedent." Id. at 704. Double jeopardy only prevents multiple prosecutions for the "same offense" or a "separate offense" where the government has lost an earlier prosecution involving the same facts;" but does not require that the government must bring its prosecutions together. Id. at 705. *Page 16 
 {¶ 32} We note that the Ohio Supreme Court has traditionally applied federal law in the double jeopardy context. See State v. Gonzalez
(2002), 151 Ohio App.3d 160, 172, 783 N.E.2d 903 citing State v.Moore (1996), 110 Ohio App.3d 649, 675 N.E.2d 13.
 {¶ 33} As stated in State v. Best, supra, to sustain a plea of former jeopardy, it must appear that there was a former prosecution in the same state for the same offense . . . and that the particular offense, on the prosecution of which the jeopardy attached, was such an offense as to constitute a bar. Id. at 533. However, having already established that GSI and Corrupting Another with Drugs are separate offenses from Contributing to the Unruliness or Delinquency of a Minor and that Contributing to the Unruliness or Delinquency of a Minor can not be considered a lesser included offense of either GSI or Corrupting Another with Drugs, the separate prosecutions in this case do not violate double jeopardy.
 {¶ 34} As related to this particular issue, we agree with the 12th District Court of Appeals' holding in State v.Wagerman, 2007-Ohio-2299 wherein the court held as follows:
 Separate prosecutions arising from a single course of conduct may be pursued in separate jurisdictions as long as the prosecutions do not violate Blockburger. Based on Dixon, it is clear that double jeopardy does not require that the government bring all prosecutions for the same course of conduct in a single prosecution in one jurisdiction as appellant suggests; it only prohibits a defendant from being charged twice with the same offense or a subsequent charge for lesser included offense. *Page 17 
Id. at ¶ 32.
 {¶ 35} In the present case, Hicks's "course of conduct" may have been the result of multiple criminal acts by Hicks which resulted in separate criminal charges. However, as previously noted, there is nothing in the record to demonstrate the facts that were the basis of Hicks's guilty plea and prior conviction in Juvenile Court for the charge of Contributing to the Unruliness or Delinquency of a Minor. Accordingly, the record does not demonstrate that Hicks was in any manner charged twice for the same offense.
 {¶ 36} Based on the foregoing, we find that the trial court did not err by dismissing Hicks's motion to dismiss Counts I, II, and III of the indictment on grounds of double jeopardy. Therefore, Hicks's first assignment of error is overruled.
 Assignment of Error No. 2 {¶ 37} In his second assignment of error, Hicks contends that the trial court improperly overruled his Criminal Rule 29 motion for acquittal on Counts VIII, IX, and X of the indictment because the State failed to prove an essential element contained in each of the crimes of Theft, Receiving Stolen Property, and Tampering with Evidence.
 {¶ 38} Crim. R. 29(A) provides that a court must order the entry of a judgment of acquittal of a charged offense "if the evidence is insufficient to *Page 18 
sustain a conviction of such offense[.]" However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. The Bridgeman standard must be viewed in light of the sufficiency of evidence test set forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492 at paragraph two of the syllabus. State v. Edwards
3rd Dist. No. 9-03-63, 2004-Ohio-4015. In Jenks, the Ohio Supreme Court held that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, supra.
 {¶ 39} The defendant may move the court for acquittal "after the evidence on either side is closed." Crim. R. 29(A). When a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant "waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense." State v. Edwards, supra citing State v. Brown (1993),90 Ohio App.3d 674, 685, 630 N.E.2d 397. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim. R. 29 motion at the close of all the evidence. Id. See also Helmick v.Republic-Franklin Ins. Co. *Page 19 
(1998), 39 Ohio St.3d 71, 529 N.E.2d 464, paragraph one of the syllabus;State v. McElroy 3rd Dist. No. 2-2000-29, 2001-Ohio-2113.
 {¶ 40} As Counts VIII and IX of the indictment are similar and relate to the same general transaction or occurrence, we shall address them together.
 {¶ 41} Count VIII of the indictment charged Hicks with Theft pursuant to R.C. 2913.02(A)(1), (B)(2) which provides, in relevant part, as follows:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent; (B)(1) Whoever violates this section is guilty of theft.
 (2) Except as otherwise provided in this division or division (B)(3), (4), (5), (6), (7), or (8) of this section, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree. . .
 {¶ 42} Count IX of the indictment charged Hicks with Receiving Stolen Property pursuant to R.C. 2913.51(A)(C) which provides, in relevant part, as follows:
 (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 * * *
 (C) Whoever violates this section is guilty of receiving stolen property. Except as otherwise provided in this division, *Page 20 receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is five hundred dollars or more and is less than five thousand dollars, if the property involved is any of the property listed in section 2913.71 of the Revised Code, receiving stolen property is a felony of the fifth degree.
 {¶ 43} In support of his second assignment of error, Hicks specifically alleges that the evidence presented by the State failed to prove that he stole the credit card or that he knew or had reason to believe that the credit card was stolen, so as to satisfy the necessary elements of R.C. 2913.02(A)(1) or R.C. 2913.51(A), and therefore he could not be convicted of Theft and/or Receiving Stolen Property.
 {¶ 44} At the May 29, 2006 jury trial the State presented the testimony of Gene Klingler ("Klingler") who testified that in the summer of 2005 he was staying at his friend Matt's house when Hicks called "wanting a ride somewhere to meet some girls." Klingler testified that Matt told Hicks that he needed some money for gas, and that Hicks called back and "said that some girl was going to give him money for gas." Klingler testified that he and Matt picked up Hicks, that Hicks went into Jackie's house by himself for approximately 15-20 minutes, and then came back out to the car with a credit card. Similarly, Jayme Jones testified that he was with Klingler, Matt, and Hicks when Hicks went into Jackie's house to get money. Jones testified that it was Hicks's idea to go to Jackie's to get money, that Hicks went into the house by himself, and that Hicks came out with a credit card. *Page 21 
 {¶ 45} The State also presented the testimony of Josh Reuter ("Reuter") who testified that in the summer of 2005 he stayed at Hicks's house one weekend and noticed that Hicks had "a piece of paper that had numbers on it and stuff like credit card numbers" and that Hicks ordered items off of the internet using these numbers. Specifically, Reuter testified that Hicks ordered a video game, a "blog type thing" and book bags from a skateboarding company. Reuter also testified that Hicks never gave him the credit card numbers to use nor did he ever use the credit card numbers himself.
 {¶ 46} Additionally, the State presented the testimony of Clark Wieland ("Clark") who testified that in the summer of 2005 his credit card was used to charge items he had not authorized. Clark testified that his wife advised him that there were unauthorized charges on their credit card statement so they confronted his daughter Jackie about those charges. Clark testified that Jackie told him she took the credit card and gave it to Hicks. However, Clark testified that he never authorized Jackie or anyone else to use his credit card.
 {¶ 47} Similarly, Andrea Wieland ("Andrea") testified that she never authorized Jackie or anyone else to use the credit card. Andrea testified that between August 28, 2005 and September 19, 2005, her credit card was used (without her permission) to purchase items in the amounts of $273.98, $4.95, $5.00, $100.00, $5.00, $29.20, and $39.95. Andrea testified that after noticing that *Page 22 
her credit card statement contained these charges, she called the companies the charges were from and then contacted the Union County Sheriff's Department. Andrea also testified that she obtained the address where the items purchased with her credit card were delivered to and that she provided this address to the Sheriff's Department.
 {¶ 48} The State also presented the testimony of Union County Sheriff Detective Eric Yoakam ("Yoakam") who testified that he obtained an initial written statement from Hicks at his home on September 29, 2005. (See also State's Exhibit 3). Yoakam testified that on this date he also collected a package from Hicks's home that had been shipped via UPS "next day air" to Hicks's residence at 532 Surrey Lane, Marysville, Ohio, but was addressed to Clark Wieland.
 {¶ 49} Sheriff Detective Shawn Golden ("Golden") also testified that he was involved in this investigation regarding the Wieland's credit card. Specifically, Golden testified that on October 6, 2005 the Sheriff's Department executed a search warrant at Hicks's residence located at 532 Surrey Lane. Golden testified that on this date he collected a Dell computer, three disks, and three CD's. Golden also testified that on this date he obtained a statement from Hicks (which Hicks signed) wherein Hicks admitted that neither Clark nor Andrea Wieland gave him permission to have or use their credit card. Golden testified that in his *Page 23 
statement, Hicks also admitted that he ordered the "G Bags" with the credit card and that he specifically "told Josh to type it [the credit card number]."
 {¶ 50} Jim Hawke ("Hawke") of the Bureau of Criminal Identification and Investigation computer crime unit testified that he received a computer from the Union County Sheriffs Department for analysis. Hawke testified that he was instructed to look for credit card information, specifically a Visa card in the name of Clark Wieland, on Hicks's computer. Hawke testified that he found both the credit card number and Clark's name "were found on the computer system in files that were on the computer" and that this information was "located on web pages, artifacts that were left on the machine after it had been accessed as web pages." Specifically, Hawke testified that "the computer had been used to access the internet on August 28, 2005 and that it contained the credit card number and the name." Hawke also testified that the credit card number and Clark's name were also present in files associated with accessing the internet from this computer on September 11, 2005.
 {¶ 51} Upon review of the record, we find that the State presented sufficient evidence to support a finding of each of the elements of Theft contained in R.C. 2913.02(A)(1), and Receiving Stolen Property contained in R.C. 2913.41(A)(C). Therefore, we cannot find that the trial court erred in denying Hicks's Crim. R. 29 motion for acquittal on Counts VIII and IX of the indictment. *Page 24 
 {¶ 52} However, we note that in his second assignment of error Hicks also specifically alleges that the evidence presented by the State failed to prove that when Hicks threw the credit card into Mill Creek, he knew that an official investigation was in progress or that one would be instituted, so as to satisfy the necessary elements of R.C. 2921.12(A)(1), and therefore he could not be convicted of Tampering with Evidence as charged in Count X of the indictment.
 {¶ 53} R.C. 2921.12(A)(1) provides as follows:
 (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
 {¶ 54} Knowledge that a criminal investigation is under way or is imminent is based upon a reasonable person standard. State v. Mann, 12th Dist. No. CA2006-05-035, 2007-Ohio-1555 citing State v. Edwards, 6th Dist. No. E-01-010, 2003-Ohio-6372, ¶ 69. The focus is on the intent of the defendant rather than the purpose of the criminal investigation.Id. at ¶ 11 citing State v. Moore (Jan. 20, 1992), Scioto App. No. 91 CA1966; Edwards. Furthermore, in order to establish that a defendant tampered with evidence, there must be some evidence connecting the defendant to the tampered evidence. State v. Wooden (1993),86 Ohio App.3d 23, 27, 619 N.E.2d 1132. *Page 25 
 {¶ 55} In the present case, the evidence demonstrated that Hicks obtained the credit card from Jackie in July of 2005, and Hicks admitted that Jackie gave him the card in the "middle of July." Additionally, we note that Hicks admitted that he did not have Clark or Andrea Wieland's permission to use their credit card. (See State's Exhibit 4, Hicks's September 30, 2005 statement). Hicks admitted that approximately three weeks after receiving the credit card from Jackie, he threw the credit card into Mill Creek because "I didn't want nothing to do with it." (See State's Exhibit 5, Hicks's October 6, 2005 statement).
 {¶ 56} Upon review of the record, we find that the State presented sufficient evidence to support a finding of each of the elements of Tampering with Evidence contained in R.C. 2921.12(A)(1); specifically, that in throwing the credit card into the river because "he wanted nothing to do with it," the jury could reasonably infer that Hicks knew an official proceeding or investigation was "likely to be instituted" as per the language of R.C. 2921.12(A)(1). Therefore, we find that the trial court did not err in denying Hicks's Crim. R. 29 motion for acquittal on Count X of the indictment.
 {¶ 57} Accordingly, Hicks's second assignment of error is overruled.
 Assignment of Error No. 3 {¶ 58} In his third assignment of error, Hicks alleges that the trial court erred in allowing the entire transcript of Stacey's Grand Jury testimony to go back *Page 26 
to the jury as this resulted in prejudice to him by allowing the jury to review testimony that was not introduced into evidence.
 {¶ 59} As a preliminary matter, we note that significant portions of the transcript of the July 9-10, 2007 jury trial are transcribed as "inaudible." Such transcription makes it extremely difficult for this court to ascertain, at points, exactly what was said by the parties as well as the court's reasoning for overruling and/or sustaining the parties' objections. Furthermore, we note that it is the appellant's duty to present this court with a fair and accurate record of the trial court proceedings giving rise to the present appeal. See, generally, App. R. 9.
 {¶ 60} For example, during the July 9, 2007 jury trial, the State presented the testimony of Stacey Helms ("Stacey") who testified that she was involved in the events that occurred on January 15, 2006 at the Amerihost Inn.[4] Stacey testified that on this date she stole $100 from her mother and gave the money to Hicks which he used to get the hotel room. Stacey testified that at some point "Ceaira drove, I think it was Kevin and Cordell (Hicks) to go, I think they had to go buy food and weed." Stacey also testified that "Kevin and Cordell came back to the room with marijuana" and that "Graham, Ceaira, Kevin, and Cordell all smoked it." *Page 27 
 {¶ 61} At this point in the State's direct examination of Stacey, the prosecuting attorney attempted to question Stacey about her January 29, 2007 Grand Jury testimony. However, prior to initiating this line of questioning, the parties conferred with the court out of the presence of the jury whereupon the following exchange occurred[5]:
 Mr. Donahue: Your honor, this is kind of an interesting situation. (Inaudible) the grand jury testimony and show it to her. If it should be in my cross-examination something is going to come out about the false statement, (inaudible) but I don't think at this point — maybe on redirect, (inaudible). If trying not to (inaudible) but it might be in my case or stuff (inaudible).
 The Court: You're objecting to it being used at this point.
 Mr. Donahue: (Inaudible).
 The Court: Other than for purposes of, of refreshing recollection. That's the only reason I would say it at this point.
 Mr. Hord: Well, the witness said she's made a statement. (Inaudible).
 The Court: Doesn't count.
 Mr. Hord: No, no I understand that. But my purpose is to put the evidence on. I'm not going to go through it. All I'm going to do is identify it as to what she said (inaudible) otherwise, it's your intention to try and use it, correct?
 Mr. Donahue: (Inaudible) I'm going to, like I said, I may be able to use that, but him using it (inaudible).
 The Court: Well, are you objecting to its use now? *Page 28 
 Mr. Hord: I'm not.
 Mr. Donahue: (Inaudible).
 The Court: Just answer the question, yes or no, do you object to it being used right at this point?
 Mr. Donahue: I'm objecting to it being used at this point.
 The Court: Then sustained.
 Mr. Hord: (Inaudible).
 The Court: You don't have to do that. The law just allows it, you got it.
(July 9, 2007 jury trial, Transcript Vol. I pp. 88-89).
 {¶ 62} The State then questioned Stacey regarding other statements she made to the police. Specifically, Stacey testified that the day after she testified at the grand jury she and her mother went to the Marysville police department because "when I testified at grand jury, I told them the truth, and Cordell had found out what I said and he got mad, so I went back and I told him [the police officer] that nothing had happened between Cordell and I that night at the hotel." (See also State's Exhibit 6). Stacey also testified that on February 1, 2007 she was found in the back of a pickup truck with Hicks, that Hicks was arrested based on this contact (as they had been previously ordered, in juvenile court, not to have any contact with each other), and that she gave another statement to the police this night. (See also State's Exhibit 7). Specifically, Stacey testified that on February *Page 29 
1, 2007 she told the police that "Cordell had found out what I told the grand jury and that he got upset about it, so I had went back and told them — told Officer Seeberg that nothing happened with — between me and Cordell at the hotel that night."
 {¶ 63} Stacey also testified that on February 5, 2007 she made another statement where she told the police "that once Cordell and found out that I didn't tell them that him and I didn't do anything at the hotel that night, that Cordell got upset with me and he said he would break up with me, so I had told my mom that nothing happened and I wanted to go back and tell them the truth because I felt bad for lying." (See also State's Exhibit 8).[6] Additionally, Stacey testified regarding a note she had written to her friend in January of 2006 about what happened between her and Hicks on the night of January 15, 2006 at the Amerihost Hotel. (See State's Exhibit 9). Our review of the record reveals that the statements contained in Stacey's note are consistent with the statements Stacey made to the Grand Jury regarding the sexual acts that occurred between Stacey and Hicks.
 {¶ 64} On cross-examination Stacey admitted that she lied to the police a couple of times but also testified that she told the truth a couple of times. Additionally, on cross-examination, defense counsel played a videotape of *Page 30 
Stacey's January 30, 2007 interview wherein she recanted her statements to the Grand Jury. (See defense Exhibit A).
 {¶ 65} On re-direct examination Stacey testified that when she testified before the Grand Jury she told the truth. At this point the State utilized Stacey's Grand Jury testimony (State's Exhibit 5) to rehabilitate her pursuant to Evid. R. 801(D), so as to point out the consistencies contained in her direct examination testimony after being challenged on cross-examination. In using the Grand Jury testimony on re-direct examination, the State asked Stacey, "[n]ow did somebody leave to go get something. And you responded how?" However, before Stacey could reply, the following exchange occurred:
 Mr. Donahue: Objection — I withdraw it.
 Stacey: No.
 Mr. Hord: How did you respond? Question, line 16 on page 6. Let me start over. Okay. Now did somebody leave and go get something? Your answer was what?
 Mr. Donahue: I'm going to object to this. May we approach, your Honor?
 The Court: Yes, you may.
 Mr. Donahue: This isn't rehabilitation. He's starting to get into — now he's trying to get her to say — to repeat the grand jury testimony about the marijuana. This isn't about rehabilitation because she wasn't asked about —
 The Court: I understand. I agree. *Page 31 
 Mr. Hord: It's a prior statement. Prior consistent statement.
 The Court: But the problem is, it's talking about the marijuana. She wasn't there. She didn't know.
 Mr. Hord: She was in the room.
 The Court: But what you're asking is where did they get it, right? Wasn't that the question?
 Mr. Hord: No, the question was did somebody leave to go get something.
 The Court: Yeah. And I say —
 Mr. Hord: And she answered, yes, Ceaira and Cordell, and I can't remember who the other person was. They went to get food and weed. They left the hotel room and that was the purpose when they left.
 Mr. Donahue: (Inaudible).
 The Court: I don't — I'm not going to allow it.
 Mr. Donahue: It's not rehabilitation either.
 The Court: I agree.
 Mr. Hord: I'm not rehabilitating. It's 801(B).
 Mr. Donahue: I did not (inaudible).
 The Court: Well, let's go on. . .
(July 9, 2007 jury trial, Transcript Vol. I pp. 130-132).
 {¶ 66} After this exchange occurred, the State continued its re-direct examination of Stacey and used State's Exhibits 6, 7, 8, and 9 to show the *Page 32 
consistencies between Stacey's Grand Jury testimony and her trial testimony. Defense counsel was then permitted to re-cross examine Stacey whereupon defense counsel specifically referenced Stacey's Grand Jury testimony.
 {¶ 67} At the close of the State's case-in-chief, the State offered Exhibits 1 through 9 into evidence. Specifically regarding State's Exhibit 5, the following exchange occurred:
 The Court: . . . State's Exhibit 5.
 Mr. Donahue: I object to that, you Honor.
 The Court: And State's Exhibit 5 was the Grand Jury testimony of Stacey Helms that was used on redirect of Stacey Helms.
 Mr. Hord: That is correct. Your Honor, there has been considerable testimony —
 The Court: And there was an attempt to use it originally on direct and then — and then there was the cross examination after which the Exhibit 5 was then used. And the Court will admit that over objection.
(July 10, 2007 jury trial, Transcript Vol. II, p. 61).
 {¶ 68} Additionally, we note that at the close of Hicks's case-in-chief, the following exchange occurred:
 Mr. Donahue: Besides the jury instructions. Your Honor, I objected to the admission of State's Exhibit 5 earlier which is the Grand Jury transcript. I think I need to — I know the Judge admitted it over my objection. I think I need to point out to the Court that the Court did sustain my objection when the Prosecutor, during direct testimony of his witness, tried to go through testimony on page six and seven. That's one and a half *Page 33 pages. That talks about her [Stacey's] testimony with regards to the marijuana. She didn't testify to anything about the marijuana while she was on the stand. And to admit this part of her Grand Jury statement when she talks about other — talks about the marijuana, it's improper because it wasn't before the Court.
 Mr. Hord: Well, number one, that was not the case. And number two, there were no objection (sic) when it was admitted as an exhibit.
 Mr. Donahue: Yes, there was.
 Mr. Hord: No. No, there was not.
 Mr. Donahue: Yes, there was. We checked the record.
 Mr. Hord: No.
 The Court: I think so. Okay. You made your objection. Not a problem. It's admitted. You made the objection.
 Mr. Donahue: This is — this is leading questions, Judge. She answers questions that —
 The Court: That doesn't matter.
 Mr. Donahue: — when asked on the stand. This is leading questions about — so, I mean, the Prosecutor says to her. So you're telling me Cordell provided him with weed to smoke? Talking about this (inaudible). She says yes. There's no testimony anywhere except in the Grand — this Grand Jury transcript. That shouldn't be before the jury.
 The Court: No. No. No. No. No. There was testimony with regard to that. I say, I've admitted it —
 Mr. Donahue: Okay. But she did not testify — Mr. Hord can say she did not testify about marijuana. She did not. *Page 34 
 The Court: Do you want to give me a chance? I've admitted it over your objection. Okay. That simple. And that's where we stand.
(July 10, 2007 jury trial, Transcript Vol. II pp. 133-134).
 {¶ 69} Based on our review of the record, it is apparent that on cross-examination defense counsel attacked Stacey's credibility, and, in order to rehabilitate her as a witness and demonstrate the consistencies between Stacey's trial testimony and prior sworn testimony, the State referenced and introduced the transcript of Stacey's Grand Jury testimony. Thus, we find that the State's use of the Grand Jury testimony was appropriately within the boundaries of re-direct examination for purposes of rehabilitating Stacey as a witness.
 {¶ 70} We are somewhat puzzled as to why the trial court did not allow the State the opportunity to use those specific portions of Stacey's Grand Jury testimony relating to the marijuana that was smoked in the hotel room on January 15, 2006 given that her Grand Jury testimony was consistent with other testimony presented at the July 9 and 10, 2007 jury trial. Additionally, we are unclear as to why the trial court, having not allowed the State to use those pages of Stacey's Grand Jury testimony relating to the marijuana in rehabilitating Stacey, then subsequently admitted State's Exhibit 5 into evidence, over objection, in its entirety. *Page 35 
 {¶ 71} However, even if we were to find that the trial court erred to the prejudice of Hicks by allowing the entire transcript of Stacey's Grand Jury testimony to go back to the jury, the admission of this exhibit would amount to nothing more than harmless error. "A reviewing court may overlook an error where the admissible evidence demonstrates overwhelming proof of defendant's guilt." State v. Williams (1988),38 Ohio St.3d 346, 351. In sum, we find that the statements at issue in Stacey's Grand Jury transcript were already provided to the jury through Stacey's own testimony at trial or in the testimony of other witnesses. In particular, we note that other witnesses testified at trial regarding the events occurring at the Amerihost Inn which supported the jury's ultimate conclusion that Hicks provided marijuana to a minor.
 {¶ 72} Our review of the record reveals that Ceaira Taylor ("Ceaira") testified that she drove Hicks, Kevin, Graham, Brittany, and Stacey to the Amerihost Inn on January 15, 2006. Ceaira testified that at one point during the night she and Hicks left the hotel room and she drove to a housing complex where Hicks obtained marijuana "with the leftover money from the hotel room." Ceaira testified that she and Hicks then "returned to the hotel and smoked it." Specifically, Ceaira testified that Hicks had brought "royal blunt wraps" with him, that she used these papers to roll the marijuana into a blunt, and that she and Hicks, Kevin, and Graham all smoked the marijuana. Similarly, Graham Perkey testified that Hicks *Page 36 
left the Amerihost Inn to get a bag of marijuana and that when he (Hicks) came back to the hotel, Graham, Kevin and Hicks smoked the marijuana that Hicks had obtained.[7]
 {¶ 73} Based on the foregoing, we find that the trial court did not err in allowing the entire transcript of Stacey's Grand Jury testimony to go back to the jury. Accordingly, Hicks's third assignment of error is overruled.
 {¶ 74} Therefore, the May 30, 2007 Journal Entry of Sentence of the Union County Court of Common Pleas is affirmed and the August 3, 2007 Journal Entry of Sentence is affirmed.
Judgments Affirmed.
 PRESTON, J., concurs.
 ROGERS, J., concurs as to Assignments of Error Nos. 1 and 2, andconcurs in judgment only as to Assignment of Error No. 3.
[1] The rule stated by Ohio courts is essentially identical. "A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. A single act may be an offense against two statutes; and if either statute requires proof of an additional fact, an acquittal of the offense requiring proof of the additional fact does not exempt the defendant from prosecution and punishment under the statute which does not require proof of such additional fact." State v. Best (1975), 42 Ohio St.2d 530, 533,330 N.E.2d 421 at FN5 citing Duvall v. State (1924), 111 Ohio St. 657,146 N.E. 90 at paragraph three of the syllabus. See also State v.Hopkins (1971), 26 Ohio St.2d 119, 269 N.E.2d 595, State v. Rose (1914), 89 Ohio St.383, 106 N.E. 50.
[2] On February 15, 2007 the State filed a Bill of Particulars which provided, in Count I that "[o]n or about January 15, 2006 in Union County . . . Cordell J. Hicks, whose date of birth is 6/30/87, had sexual conduct (penis touching) with a 12 year old female, not his spouse, at the Amerihost Inn, 16420 Square Drive in the City of Marysville, Union County, Ohio. . ." Count II of the Bill of Particulars provided that "[o]n or about January 15, 2006 in Union County . . . Cordell J. Hicks, whose date of birth is 6/30/87, had sexual contact (laying on top of the victim and moving up and down, "dry humping") with a 12 year female, not his spouse, at the Amerihost Inn, 16420 Square Drive in the City of Marysville, Union County, Ohio."
[3] In Grady, the United States Supreme Court held that generally the government must bring its prosecutions for separate offenses arising from the "same conduct" in a single prosecution. Grady, 495 U.S. 508
at 510.
[4] We note that Stacey also testified that her birthday is April 17, 1993.
[5] At the July 9-10 jury trial, the State was represented by prosecuting attorney Hord. Hicks was represented by defense counsel Donahue.
[6] In State's Exhibit 8, Stacey admitted that she lied to the Marysville Police Department in her four-page statement on January 30, 2007, stated that her testimony to the Grand Jury was actually true, and stated that she engaged in sex acts with Hicks at the hotel.
[7] We note that Graham also testified that his birthday is February 26, 1992. *Page 1