[Cite as *State v. Cavalier*, 2012-Ohio-1976.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                       :
                                    :       Appellate Case No. 24651
        Plaintiff-Appellee          :
                                    :       Trial Court Case No. 2010-CR-2859
v.                                  :
                                    :
AMY CAVALIER                        :       (Criminal Appeal from
                                    :        Common Pleas Court)
        Defendant-Appellant         :
                                    :

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of May, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County
Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972,
301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

TINA M. McFALL, Atty. Reg. #0082586, 117 South Main Street, Suite 400, Dayton, Ohio
45422
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant Amy Cavalier appeals from her conviction and

sentence for Tampering with Evidence and for Possession of a Drug Abuse Instrument.  She

contends that the trial court erred by overruling her motion to suppress evidence obtained as the result of an unlawful search; that the trial court erred by admitting, over her objection, a lab report in evidence at her trial; that the evidence in the record is insufficient to support her conviction for Tampering with Evidence; and that the trial court erred by excluding evidence she proffered that a police officer at the scene, who testified as a witness at the trial, had squeezed her throat and threatened to kill her.

{¶ 2}  We conclude that there was probable cause for Cavalier's arrest for Solicitation and for Loitering to Solicit, so that the search of her person was incident to her arrest, and therefore lawful.  We conclude that the lab report was disclosed to Cavalier sufficiently in advance of the trial, as continued by the trial court, to comply with Crim. R. 16(K), and that the trial court's continuance of the trial date was within its discretion.

{¶ 3}  We conclude that there is insufficient evidence in this record to support Cavalier's conviction for Tampering with Evidence.  Finally, we conclude that the trial court did err in excluding evidence, proffered by Cavalier, that a police officer at the scene, who testified at the trial, had squeezed Cavalier's throat and threatened to kill her, since this was admissible to show the bias of the witness.  But we conclude that this error was harmless, since the only conviction surviving this appeal is Cavalier's conviction for Possession of a Drug Abuse Instrument, which did not depend in any significant way upon that police officer's testimony.

{¶ 4}  Accordingly, Cavalier's conviction and sentence for Tampering with Evidence is Reversed; she is Discharged as to that offense; and her conviction for Possession of a Drug Abuse Instrument is Affirmed.  Because the imposition of sentence in the judgment

entry did not distinguish between the two offenses of which Cavalier was convicted, this cause is Remanded for sentencing for Possession of a Drug Abuse Instrument.

## I.  Cavalier Is Arrested and Searched

{¶ 5}  Dayton Police officer Gregory Orick was patrolling an area of North Main Street, in Dayton, in the early morning hours of September 9, 2010, when he noticed Cavalier walking north on North Main.  Orick recognized her as "a known prostitute that we've done FIs [field interviews] and written tickets to."  He knew her by her first name, only.  Orick got out of his cruiser and began to surveil her.  He concluded from the manner of her walking that she was soliciting.

{¶ 6}  Cavalier got into a vehicle, described by one officer as a Chevy Blazer. Orick got back into his cruiser and followed.  The vehicle drove a circuitous route. Eventually, two other police officers, Robert Orndorff and Joshua Campbell, each in his own cruiser, joined in following the Blazer, in radio contact with one another and with Orick.

{¶ 7}  The Blazer stopped near the intersection of Elizabeth and Rockford. Cavalier got out and went inside an apartment building known for heavy narcotics activity. Two to three minutes later, she came back outside and got back in the Blazer, which drove off.

{¶ 8}  Orick had left his cruiser when Cavalier got out of the Blazer.  He radioed Orndorff and Campbell, and the three officers took positions calculated to pick up the Blazer in whichever direction it might take.  Campbell and Orndorff did pick up the Blazer and followed it.

{¶ 9}    The Blazer stopped at Otterbein, near Stamford.  At this point, Orick was two to three minutes away.  Cavalier got out of the Blazer.  Campbell stopped the Blazer.  Orndorff arrested Cavalier.

{¶ 10}    Orndorff conducted a cursory pat-down of Cavalier, but did not handcuff her. He put her in the back seat of his cruiser and contacted Dayton Police officer Jennifer Stack, who was on duty in a nearby district, to come and conduct a thorough search incident to arrest.

{¶ 11}    Stack asked Cavalier, before conducting the search, whether she had any knives, needles, weapons, or anything else that could hurt Stack, on her person.  Cavalier said she did not.  Stack started with Cavalier's head and shoulders and worked down.  As Stack was getting to the area of Cavalier's waistband, Orndorff told Stack that Cavalier had a prior FIC (field investigation card) reflecting that Cavalier had had syringes.  Stack again asked Cavalier if she had any needles, etc., and Cavalier again said no.  And as Stack was searching Cavalier's leg, Stack again inquired, and Cavalier again said no.

{¶ 12}    As Stack began the pat-down of Cavalier's crotch area, Stack "felt a scratch and a slight prick on my right forearm."  Stack finished the pat-down, and began feeling a burning sensation on her right forearm.  Stack had one of the other officers shine a flashlight on her forearm, and noticed "a scratch and a small prick-like small blood droplet" on her right forearm.

{¶ 13}    In the meantime, Campbell and Orick had searched the Blazer, with the consent of the driver.  Orick found a rolled up paper towel in the passenger-side door pocket. He had previously seen paper towels used to roll up hot crack pipes, as well as syringe needles.  He retrieved it as evidence.  Nothing else was found having any evidentiary

significance.

{¶ 14}   By the time Stack had been pricked, Campbell, Orick and Orndorff were all in the vicinity where Stack was searching Cavalier, although they had given the women some space for the sake of Cavalier's privacy.   All three officers could tell from the change in tone of Stack's voice that she was upset.

{¶ 15}   Even though Stack "pretty much knew" that she had been pricked by a syringe needle in Cavalier's pants, she again asked Cavalier, several times, if she had a needle in her pants, and Cavalier kept saying no, she didn't.   Finally, Cavalier offered to open up her pants so that Stack could see for herself, and the women moved behind the rear of one of the police cruisers, for more privacy.   When Cavalier opened up her pants, Stack saw an orange syringe cap and part of a syringe inside Cavalier's underwear.   Stack told Cavalier to get it out. Cavalier removed the orange cap and started to hand it to Stack.   Stack told Cavalier to place it on top of the cruiser trunk.   Cavalier complied.

{¶ 16}   Stack then told Cavalier to get the rest of it out, and Cavalier said she didn't have anything else.   Stack asked Cavalier repeatedly if she had any needles, and Cavalier said no.   Finally, Orndorff came over and told Cavalier that they would take her to the hospital for hospital personnel to retrieve the needle, if Cavalier would not do it herself.   Cavalier then retrieved the syringe and placed it on the trunk of the cruiser.

{¶ 17}   Stack characterized her pat-down search of Cavalier as a search incident to arrest.

{¶ 18}   Cavalier proffered the testimony of both Orick and Campbell that at some point after the pat-down search was complete, Orick placed his hand or hands on Cavalier's

neck, squeezed, and said to Cavalier something to the effect that if anything happened to Stack, he would "personally f***ing kill you myself." The trial court did not permit this testimony to be presented to the jury.

## II. The Course of Proceedings

{¶ 19} Cavalier was charged by indictment with one count of Tampering with Evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree; one count of Harassment of a Law Enforcement Officer by Means of Contact with a Bodily Substance, in violation of R.C. 2921.38(B), a felony of the fifth degree; and one count of Possession of a Drug Abuse Instrument, in violation of R.C. 2925.12(A), a misdemeanor of the second degree.

{¶ 20} Cavalier moved to suppress evidence, contending that it was obtained as a result of an unlawful search and seizure. Following a suppression hearing, this motion was overruled.

{¶ 21} Cavalier moved to exclude a lab report concerning the contents of the syringe, which tested positive for cocaine, upon the ground that the State had not disclosed the contents of the report to her at least 21 days before trial, as required by Crim. R. 16(K). The trial court continued the trial date to a date beyond the 21-day requirement, and overruled Cavalier's motion to exclude this evidence.

{¶ 22} At trial, the trial court did not allow Cavalier to present evidence of Orick's act of having choked her and having threatened to kill her, which Cavalier offered to show bias on the part of Orick, who was called as a witness at trial.

{¶ 23} When the State rested, Cavalier moved for a judgment of acquittal on both the

Tampering with Evidence and Harassment counts. The trial court overruled this motion. Cavalier did not present any evidence in her defense.

{¶ 24} The jury found Cavalier not guilty of the Harassment count, but guilty of both Tampering with Evidence and Possession of a Drug Abuse Instrument. The trial court entered a judgment convicting Cavalier of Tampering with Evidence and Possession of a Drug Abuse Instrument. The trial court sentenced Cavalier to community control sanctions for a period not to exceed five years, including 30 days in jail, and suspended her driver's license for six months. The trial court did not differentiate between the two counts upon which Cavalier was convicted in imposing sentence.

{¶ 25} From her convictions and sentence, Cavalier appeals.


### III. There Was Probable Cause to Arrest Cavalier for Soliciting and for Loitering to Solicit, So That the Search Leading to the Seizure of Evidence Was Proper As a Search Incident to Arrest.

{¶ 26} Cavalier's First Assignment of Error is as follows:

{¶ 27} "THE TRIAL COURT ERRED WHEN IT OVERRULED THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER LACKED PROBABLE CAUSE TO ARREST THE APPELLANT, AND THEREFORE THE ARREST AND SUBSEQUENT SEARCH OF THE DEFENDANT WAS ILLEGAL UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶ 28} The State's justification for the warrantless search of Cavalier's person leading to the discovery of the syringe was predicated upon its having been a search incident

to arrest. Although the State argues in its brief that the officers also had justification to conduct a limited pat-down search for the safety of the officers, Stack testified that the search she conducted was not a limited pat-down search, but a more thorough search, incident to Cavalier's arrest. Cavalier argues that there was no probable cause justifying the arrest, and therefore the search incident to arrest.

{¶ 29} Soliciting, a misdemeanor of the third degree, is proscribed by R.C. 2907.24(A), which provides as follows: "No person shall solicit another to engage with such other person in sexual activity for hire."

{¶ 30} Loitering to Solicit, a misdemeanor of the third degree, is proscribed by R.C. 2907.241(A), which provides, in pertinent part, as follows:

(A) No person, with purpose to solicit another to engage in sexual activity for hire and while in or near a public place, shall do any of the following:

(1) Beckon to, stop, or attempt to stop another;

(2) Engage or attempt to engage another in conversation;

(3) Stop or attempt to stop the operator of a vehicle or approach a stationary vehicle;

* * *

{¶ 31} "Whether [an] arrest [is] constitutionally valid depends * * * upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio* 379 U.S. 89,

91, 85 S.Ct. 223, 225-226, 13 L.Ed.2d 142 (1964) (Citations omitted).

**{¶ 32}** Before Cavalier was arrested, Orick had observed her walking on the street for fifteen to twenty minutes. At the suppression hearing, Orick described the activity he observed that led him to conclude that Cavalier was a prostitute looking for customers:

> Walking up and down the street, North Main Street, making eye contact with cars as they would pass both northbound and southbound. This is not only this night, but previous nights. Again, as I tried to testify, women will generally try to time their location to a corner so the vehicle will have an opportunity to go on to a side street. As they walk into a side street, she would walk – especially like at Fairview for this particular night, as the car would come she would start walking on East Fairview. As soon as the car would pass by, then she'd come back out on Main Street and just continue her travel.

**{¶ 33}** Not only did Orick observe Cavalier acting in this way on the night of her arrest, he had observed her behaving similarly "numerous times" previously. Cavalier stayed within "her block, half block" while walking in this fashion.

**{¶ 34}** The behavior Orick observed, the time of day – 1:50 a.m., and the reputation of the area for prostitution, led him to conclude that Cavalier was Loitering to Solicit. When the Chevy Blazer stopped for Cavalier to get in, after flashing its brake lights in a manner Orick recognized as a signal customers use to tell a prostitute to get in the car, Orick concluded that Cavalier was Soliciting the driver of the Blazer. We conclude that Orick's own observations warranted a prudent person in believing that Cavalier was committing these offenses. Therefore, there was probable cause for Cavalier's arrest.

{¶ 35}  Cavalier's First Assignment of Error is overruled.


**IV.  The Trial Court Did Not Err in Overruling**

**Cavalier's Motion to Exclude the Lab Report.**

{¶ 36}  Cavalier's Second Assignment of Error is as follows:

{¶ 37}  "THE TRIAL COURT ERRED TO THE APPELLANT'S PREJUDICE WHEN IT FAILED TO EXCLUDE THE LAB REPORT FROM EVIDENCE AT THE TRIAL AND INSTEAD IN AN EFFORT TO COMPLY WITH CRIM. R. 16(K) ORDERED THE TRIAL DATE CONTINUED WITHOUT GOOD CAUSE SHOWN."

{¶ 38}  A laboratory report concerning the contents of the syringe, which had tested positive for cocaine, was generated on September 16, 2010.  Cavalier filed a motion for discovery on September 24, 2010.  Crim. R. 16(K) provides as follows:

> An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

{¶ 39}  The State provided Cavalier with a copy of the lab report the day before the scheduled trial date of January 25, 2011.  Cavalier sought to exclude the lab report and the expert's testimony from evidence upon the ground that Crim. R. 16(K) was violated.  The

trial court declined to do so, but continued the trial date until March 4, 2011, more than 21 days later.[1]

**{¶ 40}** Cavalier argues that Crim. R. 16(K) imposes an absolute obligation on the part of a party with an expert witness to produce a written report to the opposing party at least 21 days before trial, and that the necessary consequence of the party's failure to do so is the exclusion of the expert's testimony, citing the final sentence of the Rule. But the preceding sentence of the Rule recognizes that the trial court has some leeway in the matter, as long as neither party is prejudiced thereby.

**{¶ 41}** Furthermore, once the trial court continued the trial date, Crim. R. 16(K) was literally complied with. The lab report was disclosed to Cavalier more than 21 days before trial. Her complaint is with the trial court's decision to continue the trial, which both parties assert to have been at the State's request.

**{¶ 42}** A trial court generally has discretion in the matter of continuances. That this discretion may be exercised in connection with failures to comply with Crim. R. 16 is recognized in Crim. R. 16(L)(1):

The trial court may make orders regulating discovery not inconsistent with this rule. *If* at any time during the course of the proceedings *it is brought to the attention of the court that a party has failed to comply with this rule* or with an order issued pursuant to this rule, *the court may* order such party to permit the discovery or inspection, *grant a continuance*, or prohibit the party from introducing in evidence the material not disclosed, or it may make such

---

[1] The record does not directly reflect these actions, but Cavalier asserts that they occurred, both in her brief on appeal and in a motion to exclude she filed on January 26, 2011, and the State corroborates her assertion in its brief on appeal. Therefore, we will take these assertions to be true.

other order as it deems just under the circumstances. (Emphasis added.)

**{¶ 43}** We see no abuse of discretion. The only prejudice Cavalier asserts is that she was subject to electronic home monitoring detention pending her trial, which was extended during the period of this continuance. But if this circumstance is deemed sufficiently prejudicial to bar the granting of a request by the State for a continuance, then a trial court could never properly grant the State's request for a continuance where a defendant is subject to pre-trial confinement.

**{¶ 44}** Here, the State asserted, and the trial court appears to have agreed, that its failure to have complied with Crim. R. 16(K) was inadvertent. Expert testimony concerning the contents of the syringe was obviously important, if not essential, evidence for the jury to consider concerning the Possession of a Drug Abuse Instrument charge. Under these circumstances, the trial court did not abuse its discretion by granting the State's request for a continuance.

**{¶ 45}** Cavalier's Second Assignment of Error is overruled.

### V. The Evidence in the Record Is Insufficient to Support
### Cavalier's Conviction for Tampering with Evidence.

**{¶ 46}** Cavalier's Third Assignment of Error is as follows:

**{¶ 47}** "THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN A CONVICTION FOR TAMPERING WITH EVIDENCE."

**{¶ 48}** Cavalier was convicted of Tampering with Evidence, in violation of R.C. 2921.12(A), which provides as follows:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

**{¶ 49}** There is no evidence to establish when Cavalier put the hypodermic syringe inside her underwear, but she clearly did not do so after she was arrested, or the officers would have noticed.

**{¶ 50}** Police officers Orick, Orndorff, and Campbell testified at trial that when they had Cavalier under observation, before she was arrested, they were attempting not to be noticed by her, and they believed that she did not notice them. The State contends that Cavalier nevertheless knew that an official investigation was about to be, or was likely to be, instituted. The State cites *State v. Schmitz*, 10th Dist. Franklin No. 05AP-200, 2005-Ohio-6617, ¶ 17, for the proposition that: "When an offender commits an unmistakable crime, the offender has constructive knowledge of an impending investigation of the crime committed." While *State v. Schmitz* does contain this quoted sentence, we doubt that it should be taken so literally. To begin with, this proposition was not necessary to the court's holding, which was that there was insufficient evidence that the defendant in that case had intended to delete the evidence, which were photographs, from a computer disc.

**{¶ 51}** The quoted sentence in *State v. Schmitz* cites two previous Tenth District

cases, *State v. Cockroft*, 10th Dist. Franklin No. 04AP-608, 2005-Ohio-748; and *State v. Jones*, 10th Dist. Franklin No. 02AP-1390, 2003-Ohio-5994. Both of those cases involved fatal shootings, where it was reasonable to suppose that the shootings would be investigated. *Schmitz* at least involved a crime, Gross Sexual Imposition, with a person likely to complain. By contrast, the offense Cavalier had committed – Loitering to Solicit, or even Solicitation – was a crime without anyone who was likely to complain. Cavalier had no great reason to suppose that she would be the subject of an official investigation.

{¶ 52} The State argues that anyone who commits an offense is on constructive notice that an official investigation will ensue. In our view, this argues too much. If the State is correct, then anyone who commits the offense of changing lanes without signaling, continues on home, and then parks in a closed garage, would be guilty of Tampering with Evidence, a third-degree felony, since the offender would be on constructive notice that an official investigation is likely to result, and by parking the vehicle used in the commission of the offense in a closed garage, the offender has impaired its availability as evidence – an investigating police officer will be less likely to find it.

{¶ 53} We conclude that the evidence in this record does not support a finding that Cavalier knew, before she was arrested, that an official investigation was likely to be instituted.

{¶ 54} The State also argues that when Cavalier was asked, both before and during, Stack's pat-down search, whether she had any needles on her person, and answered in the negative, she committed the offense of Tampering with Evidence. Obviously, Cavalier knew, during the pat-down search, that she was the subject of an official investigation. The issue is

whether her denials constituted a concealment of the syringe, in violation of R.C. 2921.12(A)(1), or the making, presentation or use of any record, document, or thing, knowing it to be false, and with the intention of misleading an official engaged in an official investigation, in violation of R.C. 2921.12(A)(2).

{¶ 55} In construing R.C. 2921.12(A), we are guided by the familiar principle that criminal statutes must be construed strictly against the State. R.C. 2901.04(A). The making of a false statement to mislead a public official is the subject of R.C. 2921.13 – Falsification, which is generally punishable as a misdemeanor. This suggests that R.C. 2921.12(A) is intended, by contrast, to deal with the concealment, destruction, alteration, or falsification of tangible evidence, possibly including electronic data, as opposed to a false oral statement.

{¶ 56} Furthermore, to give R.C. 2921.12(A) the broad reach argued by the State would lead to a self-incrimination problem identified in *State v. Sowry*, 155 Ohio App.3d 742, 2004-Ohio-399, 803 N.E.2d 867 (2d Dist.), ¶ 21. If the State's argument were accepted, a police officer could ask any person about the existence and location of potential incriminating evidence, and if the person were to falsely deny the existence of the incriminating evidence, he or she would be guilty of Tampering with Evidence, a third-degree felony. This would exert a compulsion on the person to disclose the location and existence of incriminating evidence, in violation of that person's right, under both the Fifth Amendment to the United States Constitution, and Article I, Section 10, of the Ohio Constitution, not to be compelled to testify against himself or herself.

{¶ 57} Theoretically, the person asked about potential incriminating evidence could assert the constitutional privilege, rather than respond falsely, but this is unrealistic in view of

the fact that in almost all such situations, the person being interrogated will not have had an opportunity to consult counsel.

{¶ 58} In view of the strict construction of criminal statutes, and the principle of construing a statute, where reasonably possible, to avoid constitutional issues, we conclude that R.C. 2921.12 is not intended to encompass the false oral statements in this case.

{¶ 59} Cavalier's Third Assignment of Error is sustained.

## VI. The Trial Court Erred in Excluding Evidence of the Bias of the Witness Orick, But this Error Was Harmless in View of this Court's Disposition of Cavalier's Third Assignment of Error.

{¶ 60} Cavalier's Fourth Assignment of Error is as follows:

{¶ 61} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT BARRED THE DEFENDANT FROM ENTERING AT TRIAL EVIDENCE THAT OFFICER ORICK BOTH CHOKED AMY CAVALIER AND THREATENED TO KILL HER[,] THEREFORE WAS A BIASED WITNESS."

{¶ 62} Before trial, the State moved in limine to exclude evidence that Orick had choked Cavalier, or had squeezed her throat, and had threatened to kill her. Cavalier argued at that time that if Orick should testify as a witness, then she should be permitted to elicit this evidence to show Orick's bias as a witness. The trial court disagreed.

{¶ 63} At trial, Cavalier renewed her request to pursue this line of questioning. The trial court would not permit it, but did permit a proffer, outside of the presence of the jury, at which Cavalier established the facts of Orick's having squeezed her throat, and having

threatened to kill her if anything should happen to Stack, both through the testimony of Orick and through the testimony of Campbell.

{¶ 64}  Evidence of the bias of a witness is expressly permitted by Evid. R. 616(A). Although the Ohio Rules of Evidence frequently involve a weighing process that gives a trial court some discretion – Evid. R. 403(B), for example – the Rules of Evidence have the force of law, and may not be ignored.  Evidence of a witness's bias also has significance under the Confrontation clauses of both the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.  The prohibition of any inquiry concerning the possibility that a witness is biased has been held to violate the Sixth Amendment Confrontation clause.  *Delaware v. Van Arsdell*, 475 U.S. 673, 678-679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

{¶ 65}  The proffered evidence was probative of Orick's ill-feeling toward Cavalier. This was understandable in view of Cavalier's conduct that exposed Stack, a fellow police officer, to a serious risk of harm.  This evidence was competent to show to the jury that Orick might not be approaching his testimony with the same detached neutrality that should ordinarily accompany a police officer's testimony in a criminal trial.  The jury should have had this evidence, to make of it what they would, and it was error not to have permitted it.

{¶ 66}  But we conclude that the error in excluding this evidence is necessarily harmless.  In view of our disposition of Cavalier's Third Assignment of Error, the only conviction surviving this appeal is Cavalier's conviction for Possession of a Drug Abuse Instrument.  That conviction did not depend upon Orick's testimony in any significant way. It was Stack who observed the syringe in Cavalier's underwear, and who saw Cavalier retrieve

it from there and place it on top of the cruiser trunk, not Orick. Although Orick testified that he straightened the bent needle somewhat, for the protection of all concerned, it was Campbell who took charge of the evidence and got it to the property room.

{¶ 67} Even if Orick's testimony had been totally discredited by the jury, there is no reason to believe that their verdict on the charge of Possession of a Drug Abuse Instrument (upon which Cavalier conceded guilt in her closing argument) would have been affected.

{¶ 68} Cavalier's Fourth Assignment of Error is overruled as harmless.


## VII.   Conclusion

{¶ 69} Cavalier's Third Assignment of Error having been sustained, her First and Second Assignments of Error having been overruled, and her Fourth Assignment of Error having been overruled as harmless, her conviction for Tampering with Evidence is Reversed, and she is Discharged as to that offense. Her conviction for Possession of a Drug Abuse Instrument is Affirmed. Because the judgment entry does not distinguish between the Tampering with Evidence and Possession of a Drug Abuse Instrument convictions for sentencing purposes, this cause is Remanded for sentencing upon Cavalier's Possession of a Drug Abuse Instrument conviction.

. . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck/Johnna M. Shia
Tina McFall
Hon. Mary K. Huffman