[Cite as *State v. Rock*, 2014-Ohio-1786.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,     CASE NO. 13-13-38

 v.

AARON E. ROCK,       O P I N I O N

 DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 12-CR-0242

Judgment Affirmed

Date of Decision: April 28, 2014

APPEARANCES:

 *John M. Kahler II* for Appellant

 *Angela M. Boes* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Aaron E. Rock, appeals the Seneca County Court of Common Pleas' judgment entry of sentence. We affirm.

{¶2} On November 7, 2012, the Seneca County Grand Jury indicted Rock on: Count One of possession of drugs in violation of R.C. 2925.11(A), (C)(2)(a), a fifth-degree felony with the specification that Rock had previously been convicted of a drug-abuse offense; and, Count Two of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. (Doc. No. 1). The indictment stemmed from a May 31, 2012 incident in which a Fostoria, Ohio police officer witnessed Rock toss something—which turned out to be hydrocodone pills—aside as he walked down a street and as the officer approached in his patrol car.

{¶3} The trial court held an arraignment hearing on December 4, 2012. (Dec. 4, 2012 Tr. at 2); (Doc. No. 16). Rock appeared without counsel, and the trial court entered on Rock's behalf pleas of not guilty. (*Id.* at 5); (*Id.*). The trial court also appointed counsel for Rock. (Doc. No. 16).

{¶4} On May 2, 2013, a jury trial was held on the indictment. (May 2, 2013 Trial Tr. at 5); (Doc. No. 28). The jury found Rock guilty on both counts and further found, as to Count One, that Rock was previously convicted of a drug-abuse offense. (May 2, 2013 Verdict Tr. at 5); (Doc. No. 28).

{¶5} On August 16, 2013, the trial court sentenced Rock to 11 months imprisonment on Count One and 24 months imprisonment on Count Two, to be served concurrently. (Aug. 16, 2013 Tr. at 42-43); (Doc. No. 30). The trial court filed its judgment entry of sentence on August 19, 2013. (Doc. No. 30).

{¶6} On September 12, 2013, Rock filed a notice of appeal. (Doc. No. 34). He raises one assignment of error for our review.

### Assignment of Error

**The trial court erred in failing to grant the Appellant's motion for acquittal pursuant to Crim. R. 29 where the evidence was insufficient to prove that the Appellant tampered with evidence.**

{¶7} In his assignment of error, Rock argues that the trial court erred by not granting his Crim.R. 29 motion for acquittal because the evidence was insufficient to sustain a conviction against him for tampering with evidence.[1] Specifically, Rock argues that the investigation had not begun when he dropped the pills to the ground and that he dropped the pills to the ground "right in front of" the officer, ensuring that the pills would be found.

{¶8} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261

---

[1] Rock does not challenge his conviction for possession of drugs.

(1978), syllabus. "The *Bridgeman* standard 'must be viewed in light of the sufficiency of evidence test[.]'" *State v. Hansen*, 3d Dist. Seneca No. 13-12-42, 2013-Ohio-1735, ¶ 35, quoting *State v. Foster*, 3d Dist. Seneca No. 13-97-09, 1997 WL 576353, *2 (Sept. 17, 1997).

{¶9} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997).

{¶10} "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶11} R.C. 2921.12 sets forth the elements of the offense of tampering with evidence and provides, in relevant part: "No person, knowing that an official

proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *." R.C. 2921.12(A)(1).

{¶12} "Knowledge that a criminal investigation is under way or is imminent is based upon a reasonable person standard." *State v. Hicks*, 3d Dist. Union Nos. 14-07-26 and 14-07-31, 2008-Ohio-3600, ¶ 54, citing *State v. Mann*, 12th Dist. Clermont No. CA2006-05-035, 2007-Ohio-1555, ¶ 11. "The focus is on the intent of the defendant rather than the purpose of the criminal investigation." *Id.*, citing *Mann* at ¶ 11.

{¶13} R.C. 2921.12(A)(1) employs a "purposely" culpability standard. *See State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, ¶ 21 (9th Dist.), citing *State v. Jones*, 9th Dist. Summit No. 23234, 2006-Ohio-6963, ¶ 13-15. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). *See Skorvanek* at ¶ 21. A defendant's state of mind may be inferred from the totality of the surrounding circumstances when determining whether the defendant acted

purposely. *Skorvanek* at ¶ 21, citing *State v. Patel*, 9th Dist. Summit No. 24030, 2008-Ohio-4693, ¶ 34.

{¶14} Therefore, the key inquiries in this case are whether the evidence, when viewed in a light most favorable to the prosecution, is such that any rational trier of fact could have found that: (1) a reasonable person in Rock's position would have known that an official investigation was in progress or was about to be or likely to be instituted; and (2) Rock concealed or removed the pills by tossing them with the specific intention of impairing their availability as evidence in the investigation. *See* R.C. 2921.12(A)(1); *Hicks* at ¶ 54; *Skorvanek* at ¶ 21.

{¶15} At trial, Fostoria Police Officer Brandon Bell testified that on May 31, 2012 at 2:45 a.m., he was traveling in his patrol car down Crocker Lane in Fostoria when he observed three individuals—Rock, another male, and a female— walking toward him. (May 2, 2013 Trial Tr. at 115-116). The headlights of Bell's patrol car were on. (*Id.* at 117). As Bell approached the individuals, he observed Rock "with his left hand toss an item onto the ground." (*Id.* at 117). According to Bell, Rock threw the item to the ground, about 10 feet away to the left and back of Rock, using a "real quick" throwing motion using his wrist and "[n]o articulation" of his arm or elbow. (*Id.* at 137, 167). All Bell saw was a "white blur." (*Id.* at 137). Where Rock threw the item was a "dark area," although there was a street light over the alley about 10 to 15 feet away, and Bell agreed on cross-

examination that Rock threw the pills in Bell's "plain view." (*Id.* at 117, 126, 131).

**{¶16}** Bell stopped his patrol car close to where Rock dropped the item, instructed Rock and the others to stop walking, searched around in the grass where Rock threw the item, and found the item—two white, oblong pills in a cellophane wrapper—in the grass off the alleyway. (*Id.* at 118, 132, 137). Bell found the pills in about 30 seconds and without using a flashlight. (*Id.* at 132, 137). Later testing revealed that the pills contained hydrocodone, a controlled substance. (*Id.* at 121-122). Bell identified State's Exhibit 1 as a photograph of the pills and cellophane wrapper Rock tossed. (*Id.* at 119-120).

**{¶17}** Bell asked Rock what the item was, and Rock responded, "I don't know what you're talking about. I didn't throw anything down." (*Id.* at 118). According to Bell, after more inquiry, Rock "admitted that he had thrown the items down and he believed they were Vicodin." (*Id.*). Bell then arrested Rock for possession of a controlled substance. (*Id.* at 119). Once at the jail, Rock told Bell that one of the other two individuals with whom he was walking, Rocky Swartz, handed him the pills as Bell was approaching in his patrol car. (*Id.* at 135-136).

**{¶18}** After Bell testified, the State rested. (*Id.* at 140). Rock moved for acquittal under Crim.R. 29, citing three opinions, including this Court's opinion in

*State v. Delaney*, and arguing that because the testimony revealed that Rock threw the pills to the ground in the plain view of Bell, Rock could not be guilty of tampering with evidence. (*Id.* at 140-144). The trial court overruled Rock's motion for acquittal, concluding that *Delaney* was distinguishable. (*Id.* at 144).

{¶19} Viewing the evidence in a light most favorable to the prosecution, we conclude that Rock's tampering-with-evidence conviction is supported by sufficient evidence. First, a rational trier of fact could have found that a reasonable person in Rock's position would have known that an investigation was about to be or likely to be instituted. Bell testified that Rock told him that Swartz handed him the pills as Bell approached in his patrol car, and Rock believed they were Vicodin pills. Regardless of whether a reasonable person in Rock's position would have known the oncoming vehicle contained a police officer, passing illegal drugs in front of others in public would put a reasonable person on notice that his illegal activity would be reported to law enforcement and an investigation instituted.

{¶20} Moreover, a reasonable person in Rock's position would not have felt the need to toss the pills aside using a discrete motion with his or her wrist if that person did not believe an investigation was likely to be instituted. Rock's argument that Bell had not begun his investigation when he tossed the pills ignores that "[t]he focus is on the intent of the defendant" and that the statute does not

require that the investigation be underway, only that a reasonable person in the defendant's position know that an investigation "is about to be or likely to be instituted." *Hicks*, 2008-Ohio-3600, at ¶ 54; R.C. 2921.12(A)(1).

**{¶21}** A rational trier of fact could have also found that Rock removed the pills from his person, and concealed them by tossing them, with the specific intention of impairing their availability as evidence in the investigation. According to Bell, Rock tossed the pills into a "dark area" in the early morning hours and continued walking until Bell told him to stop. It took Bell half a minute to find the pills,[2] and when he asked Rock about them, Rock at first denied any knowledge, but then admitted that he threw the pills and that he believed they were Vicodin.

**{¶22}** For purposes of R.C. 2921.12(A)(1), "[a] defendant's act of removing contraband from his or her person can constitute concealment or removal if done to avoid discovery." *State v. Straley*, 2d Dist. Clark No. 2012-CA-34, 2013-Ohio-510, ¶ 9, citing *State v. Colquitt*, 2d Dist. Clark No. 98-CA-71, 1999 WL 812313, *5 (Sept. 24, 1999). The evidence sufficiently demonstrated that Rock removed from his person and tossed the pills—concealing them for at least a time—with the specific intention of impeding their discovery. Therefore, Rock's argument that he could have used a different, more successful form of

---

[2] Citing the defense's cross-examination of Bell, the dissent suggests that Bell "testified that he found the drugs in his 'plain view.'" However, Bell agreed only that "Rock's actions of tossing these pills to the ground * * * was in [his] plain view." (May 2, 2013 Trial Tr. at 131).

concealment—such as hiding the pills on his person or swallowing them—is of no legal import.

**{¶23}** As he did when making his motion for acquittal at trial, Rock relies heavily on our opinion in *State v. Delaney*, 3d Dist. Union 14-04-10, 2004-Ohio-4158. In that case, law enforcement executed a search warrant at a home. *Id.* at ¶ 2. The detective conducting the search observed three people in the rear of the home, told them he had a search warrant, and requested that they move into the living room. *Id.* As the defendant, Delaney, was walking down the hall toward the living room, he reached into his sock and removed something in plastic and dropped it to the floor "immediately ahead" of the detective. *Id.* The detective saw Delaney do this and stopped him. *Id.* The cellophane wrapper—which landed approximately one foot away from Delaney—contained crack cocaine. *Id.*

**{¶24}** Unlike *Delaney*, in which the defendant removed his crack cocaine in a home and "immediately ahead" of the detective observing him, Bell was still approaching in his patrol car when Rock tossed the pills into a "dark area" approximately 10 feet away and continued walking. Bell happened to be watching Rock at the time, but all Bell saw was a "white blur." It was the middle of the night. Rock concealed his pills well enough that it took Bell about 30 seconds to find them in the grass. Delaney's crack cocaine landed a foot away from him in "plain view" on the carpet in a house, and the detective "immediately found the

drugs." *Delaney* at ¶ 7. As for culpability, when Bell asked Rock about the pills, Rock initially denied knowing anything about them. On the other hand, there is no indication that Delaney denied possessing the crack cocaine. For all of these reasons, *Delaney* is distinguishable and not controlling in this case.

{¶25} Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found proven beyond a reasonable doubt that a reasonable person in Rock's position would have known that an official investigation was about to be or likely to be instituted and that Rock removed and concealed the pills with the specific intention of impairing their availability as evidence in the investigation.

{¶26} Rock's assignment of error is overruled.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs in Judgment Only.**


**ROGERS., J. Dissents.**

{¶28} I respectfully dissent from the opinion of the majority. I agree with the majority's characterization of the manner in which Appellant separated himself from the property in question. However, I find no evidence that Appellant had

knowledge "that an official proceeding or investigation [was] in progress, or [was] about to be or likely to be instituted." R.C. 2921.12(A). Therefore, Appellant could not have formed a *purpose* "to impair [the property's] value or availability as evidence in such proceeding or investigation."

{¶29} Initially, I must note that it appears that the State was confused as to the proper standard of review in this case. While it properly recognizes that a motion for acquittal tests the sufficiency of the evidence, it appears the State mistakenly believes that the issue of sufficiency and manifest weight are governed by the same standard. In its brief, the State supports its position by discussing what Rock testified to during his own case-in-chief, after he had already moved for a motion for acquittal. The State also claims "the only evidence supporting Defendant's position was his own self-serving testimony. Clearly, the trial court did not find Defendant * * * to be credible." Appellee's Br., p. 9. The State then cites our decision in *State v. Payne*, 3d Dist. Hancock No. 5-04-21, 2004-Ohio-6487, stating that " '[i]t is axiomatic that the credibility of witnesses is primarily an issue for the trier of fact * * * accordingly, [a reviewing court] must afford the decision of the trier of fact concerning such credibility issues the appropriate deference.' " Appellee Br., p. 9, quoting *Payne* at ¶ 15. This excerpt from *Payne* concerned a review of whether a conviction was against the manifest weight of the evidence, not a test for sufficiency.

**{¶30}** "The Supreme Court of Ohio has repeatedly distinguished sufficiency and manifest weight arguments, holding '[a] claim that a jury verdict is against the manifest weight of the evidence involves a separate and distinct test that is much broader [than the test for sufficiency].' " *State v. Purdy*, 3d Dist. Allen No. 1-12-56, 2013-Ohio-4105, ¶ 49 (Rogers, J., concurring), quoting *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 193. Therefore, when reviewing whether a conviction is supported by sufficient evidence we review if *the State presented* sufficient evidence to support a finding of each of the elements of tampering with evidence, and the credibility of the defendant, or any witness, is of no importance.

**{¶31}** The offender's prior knowledge of an ongoing official proceeding or investigation, or knowledge that either was likely to be instituted, is a necessary predicate to the offense of tampering with evidence. R.C. 2921.12(A). Without that prior knowledge, one cannot form the intent to impair the value of the property to the said (non-existent) investigation. Further, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Additionally, Black's Law Dictionary defines "knowledge" as having "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." (9th Ed.2009).

**{¶32}** In this matter, the State did not provide any evidence which would show that a reasonable person in Rock's position would have knowledge that an official proceeding or investigation was in progress, or about to be, or that one was likely to be instituted. As such, Rock's conviction constitutes a denial of due process and a manifest injustice. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997) ("[A] conviction based on legally insufficient evidence constitutes a denial of due process, and constitutes a manifest injustice.").

**{¶33}** Officer Bell testified that as he was driving down the street, an official proceeding or investigation was not in, or about to be in, progress.

> Q: All right. Just so we're clear, until Aaron Rock actually tossed whatever was in his hand, you weren't actually on any type of official investigation into him, were you?
>
> A: No.
>
> Q: It was, what triggered your investigation was the fact that you saw him toss something?
>
> A: Correct.

Trial Tr., p. 127. By Officer Bell's own admission, an investigation had not yet begun, and would not have begun, had he not seen Rock toss something onto the sidewalk. Thus, the State was required to prove, beyond a reasonable doubt, that a reasonable person in Rock's position would have known that an investigation was likely to occur before he dropped the drugs onto the sidewalk.

-14-

**{¶34}** Officer Bell testified that on May 31, 2012, he was traveling in his patrol car when he recognized three individuals walking down the street towards his police car. Although Officer Bell had his headlights on, he did not have his lights and sirens on. *Id.*, at p. 126. Further, at the time Rock had tossed the drugs on the ground, Officer Bell had not stopped his car but was still driving down the street. Officer Bell also admitted that due to the distance and the lighting, Rock may not have been able to see that his vehicle was a police car. *Id.* at p. 131.

**{¶35}** Further, Officer Bell testified that he found the drugs in his "plain view." *Id.* at p. 131. It took him less than a minute, only 30 seconds, to find the pills, and Officer Bell did not even have to use a flashlight. *Id.* at p. 137. Officer Bell also admitted that Rock did not conceal nor destroy the drugs. *Id.* at p. 132. Officer Bell then had the following exchange with Rock's defense counsel:

Q: Now, if he would've swallowed [the pills], case over, right?

A: Right.

Q: You'd have no case.

A: Right. That would have been the best solution, I guess.

Q: If you were a criminal and knew that you were doing something wrong, you would have swallowed them, right?

A: Which I was surprised he didn't.

*Id.* at p. 133. This further supports the proposition that Rock did not have knowledge that a criminal investigation was likely to start. Officer Bell testified

-15-

that a reasonable person, who knew a criminal investigation was likely to occur, would have swallowed the drugs in an attempt to conceal his or her criminal behavior.

**{¶36}** The only evidence the State presented was that Officer Bell was driving down a dark street, without making his car readily identifiable as a police cruiser, and it argues that this gave Rock the requisite "knowledge" that a criminal investigation was likely to occur. Officer Bell did not put on his sirens, stop his car, or even yell commands at Rock from his car. How is it reasonable to assume that Rock had *knowledge* that a criminal investigation was about to occur? What would have been the subject of the investigation? The State and the majority fall short of answering these essential questions.

**{¶37}** While the majority correctly cites to *State v. Hicks*, 3d Dist. Union Nos. 14-07-26, 14-07-31, 2008-Ohio-3600, for the proposition that "[k]nowledge that a criminal investigation is under way or is imminent is based upon a reasonable person standard" the facts in *Hicks* are distinguishable. ¶ 54. In *Hicks*, it was demonstrated that the defendant had gained possession of a credit card and used it without the permission of the owner, charging hundreds of dollars of unauthorized purchases. *Id*. at ¶ 2, 47. A reasonable person would assume that a victim would be likely to report hundreds of dollars of unauthorized activity on his or her credit card and that a police investigation would likely ensue.

-16-

{¶38} A reasonable man who is walking down a sidewalk does not automatically anticipate an investigation when a vehicle approaches down the same street. Even if it could be recognized as a police vehicle, a reasonable man does not automatically anticipate an investigation. Further, being stopped and questioned does not rise to the level of an investigation, and in this case, even that had not yet occurred. One court has determined that "[t]he routine administrative processing or 'booking' of [a defendant] into the jail cannot be considered an 'investigation' in the sense contemplated by the statute." *State v. Moulder*, 2d Dist. Greene No. 08-CA-108, 2009-Ohio-5871, ¶ 7

{¶39} The Second District has also held that an offender engaging in solicitation, who was being followed by police cruisers, had no reason to believe she would be the subject of an official investigation. *State v. Cavalier*, 2d Dist. Montgomery No. 24651, 2012-Ohio-1976, ¶ 51. In *Cavalier*, an officer began surveillance on a known prostitute and followed her in his police cruiser. *Id.* at ¶ 5. Two other police officers joined in the surveillance, also following the defendant in their respective cruisers. *Id.* at ¶ 6. When the defendant was finally pulled over, officers found a syringe in her underwear. *Id.* at ¶ 15. The court found that there was insufficient evidence to convict the defendant of tampering with evidence because the State did not prove that the defendant "knew, before she was arrested, that an official investigation was likely to be instituted." *Id.* at ¶ 53.

Despite being followed by three marked police cruisers, the defendant "had no great reason to suppose that she would be subject of an official investigation" merely because she was engaging in the crime of solicitation. *Id.* at ¶ 51. The court went on to explain:

> The State argues that anyone who commits an offense is on constructive notice that an official investigation will ensue. In our view, this argues too much. If the State is correct, then anyone who commits the offense of changing lanes without signaling, continues on home, and then parks in a closed garage, would be guilty of Tampering with Evidence, a third-degree felony, since the offender would be on constructive notice that an official investigation is likely to result, and by parking the vehicle used in the commission of the offense in a closed garage, the offender has impaired its availability as evidence—an investigating police officer will be less likely to find it.

*Id.* at ¶ 52.

{¶40} In *State v. Lovelace*, 5th Dist. Stark No. 2002CA00260, 2003-Ohio-732, police officers pulled up to the defendant's vehicle and the defendant exited his vehicle and started running from police. ¶ 3. While chasing after the defendant, police officers identified themselves and ordered the defendant to stop. *Id.* After chasing the defendant around a house, they observed the defendant throwing items from his pockets. *Id.* The court found that there was sufficient evidence that the defendant knew that an investigation was likely when the police, with their badges visible, approached the defendant. *Id.* at ¶ 10. Further, the defendant started running from police and was ordered to stop, making it more

evident that the defendant was "fully aware of the police street investigation into his activities at the time he tossed away the heroin." *Id.*

{¶41} Here, the State presented no evidence which would demonstrate that a reasonable person in Rock's position would know that a police investigation was likely to be initiated. Unlike *Lovelace*, where police officers parked their cars in front of the defendant and identified themselves as police officers, Officer Bell was driving down the street, had not parked his car in front of Rock, or even put his lights and sirens on. Officer Bell admitted that it was likely Rock was unaware that his car was a police cruiser due to his distance from Rock and the lighting outside. There is absolutely no evidence which shows that a reasonable person, in Rock's situation, would have the requisite knowledge that an investigation was likely to occur.

{¶42} I would therefore find that there is insufficient evidence to support the conviction for tampering with evidence, sustain the assignment of error, and vacate the conviction on that offense.

**/jlr**