[Cite as *State v. Hansen*, 2013-Ohio-1735.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  13-12-42

      v.

TAWNY N. HANSEN,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 12-CR-0084

**Judgment Affirmed**

Date of Decision:   April 29, 2013

APPEARANCES:

    *Kent D. Nord*  for Appellant

    *Derek W. DeVine and Brian O. Boos*  for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Tawny N. Hansen, appeals the Seneca County Court of Common Pleas' judgment entry of conviction and sentence. For the reasons that follow, we affirm.

{¶2} The Tiffin Municipal Court sentenced Hansen's boyfriend, Casey Gowitzka, to ten days in jail following his plea of no contest to possession of drug paraphernalia. (*See* State's Ex. 1, Doc. No. 1).

{¶3} On April 10, 2012, around 10:30 a.m., Hansen called the court, advising a deputy clerk that if her boyfriend was in jail, she could not attend secondary school. (July 17-18, 2012 Tr. at 8, 121); (State's Ex. 1). Hansen expressed her resentment with the court and threatened to blow up the courthouse. (*Id.* at 8, 121-124). The court then reported the bomb threat to the Tiffin Police Department. (*Id.* at 122-123, 137-138, 142). Later that same day, Hansen called the Tiffin Police Department and complained about the officer who arrested her boyfriend. (*Id.* at 8); (State's Ex. 1). After speaking with Hansen, the dispatch officer realized she was the same person who had threatened to blow up the courthouse earlier that day. (State's Ex. 1); (July 17-18, 2012 Tr. at 179). When the dispatch officer advised Hansen that she could not make such threats, Hansen stated "well if it comes down to it, I don't care because I am already losing five years of school because I can't get there today." (State's Ex. 1). When the

dispatch officer warned Hansen a second time not to threaten the municipal court, she stated "[w]ell, if something doesn't get done, I will fuckin' do it. I don't care, because you guys already ruined my life. I'm schizophrenic and bipolar. I will flip out." (*Id*.). Hansen continued, "I don't want to have to do something stupid. And I will, because I'm fucking about to flip out." (*Id*.). Thereafter, police officers searched the courthouse, and the other governmental offices located in the same building, for explosive devices but did not find anything. (July 16-17, 2012 Tr. at 166-168).

{¶4} Hansen was arrested and served with a copy of a complaint charging her with one count of making a terroristic threat in violation of R.C. 2909.23(A)(c), a third degree felony, that same day. (Doc. No. 1). On April 12, 2012, Hansen appeared before the Tiffin Municipal Court and requested a continuance of the matter. (*Id*.). The trial court set bond at $100,000.00 cash/surety with no 10% allowance. (*Id*.)

{¶5} On April 18, 2012, the State filed a motion to amend the complaint to also include subsection (A)(2) under R.C. 2909.23, which was granted. (*Id*.)

{¶6} On April 20, 2012, Hansen waived her right to a preliminary hearing and agreed to have this matter bound over to the Seneca County Common Pleas Court. Hansen's bond was continued. (*Id*.).

{¶7} On May 16, 2012, Hansen's attorney filed a notice of appearance, along with a demand for discovery and a request for a bill of particulars. (Doc. No. 2).

{¶8} On May 23, 2012, the Seneca County Grand Jury indicted Hansen on one count of making a terroristic threat in violation of R.C. 2909.23(A)(1)(c),(2), (C), a third degree felony. (Doc. No. 3).

{¶9} On May 24, 2012, the trial court set bond at $100,000.00 with no 10% allowance. (Doc. No. 7).

{¶10} On June 6, 2012, the State filed a bill of particulars and its discovery response. (Doc. Nos. 8-9). On that same date, Hansen entered a plea of not guilty at arraignment, and the trial court modified her bond to $50,000.00, with no 10% allowance. (Doc. No. 11). On June 26, 2012, the State filed an amended bill of particulars. (Doc. No. 14).

{¶11} On July 11, 2012, Hansen filed a motion in limine to exclude all evidence of statements she made pertaining to the bomb threats other than those she allegedly made to the Tiffin Municipal Court deputy clerk. (Doc. No. 26).

{¶12} On July 12, 2012, the Tiffin Municipal Court Judge Mark Repp filed a motion to quash a subpoena duces tecum Hansen served on him, which requested a copy of the court's security plan. (Doc. No. 27).

{¶13} On July 13, 2012, Hansen filed a motion in limine to exclude statements she made at the time of her arrest. (Doc. No. 30). On this same date, the trial court granted Judge Repp's motion to quash. (Doc. No. 33).

{¶14} On July 16, 2012, Hansen filed a motion for discharge, alleging that the State violated her speedy trial rights under R.C. 2945.73. (Doc. No. 34).

{¶15} On July 16-17, 2012, a jury trial was held. Prior to the jury verdict, Hansen made a motion for mistrial, which was denied. (July 16-17, 2012 Tr. at 232-242). Thereafter, the jury found Hansen guilty. (Doc. No. 41). On July 17, 2012, Hansen filed a motion for acquittal pursuant to Crim.R. 29(A). (Doc. No. 35). On this same day, the trial court filed entries overruling Hansen's two motions in limine, motion for discharge, and motion for acquittal. (Doc. Nos. 36, 38). The trial court also filed its entry of conviction and ordered a pre-sentence investigation report ("PSI"). (Doc. No. 42).

{¶16} On September 11, 2012, the trial court sentenced Hansen to 18 months imprisonment. The trial court filed its judgment entry sentence on September 19, 2012. (Doc. No. 50).

{¶17} On October 11, 2012, Hansen filed her notice of appeal. (Doc. No. 55). Hansen now appeals raising eight assignments of error for our review. We elect to address Hansen's assignments of error out of the order presented in her brief and to combine her assignments of error where appropriate.

**Assignment of Error No. IV**

**The trial court erred when it denied Appellant's Motion for Discharge pursuant to ORC §2945.73.**

{¶18} In her fourth assignment of error, Hansen argues that the trial court erred by denying her motion for discharge since the State failed to prosecute her within the 270 days allowed by R.C. 2945.73. In particular, Hansen argues that the trial court erred by tolling time from the date of the indictment, May 23, 2012, until the day the State filed its discovery response, June 6, 2012. Hansen argues that defense counsel inappropriately filed the discovery motion prior to arraignment; and therefore, the tolling of time should have commenced at the earliest on the date of arraignment.

{¶19} R.C. 2945.71(C)(2) provides: "[a] person against whom a charge of felony is pending [s]hall be brought to trial within two hundred seventy days after a person's arrest." "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). The speedy trial provisions in R.C. 2945.71 are coextensive with constitutional speedy trial provisions. *State v. King*, 70 Ohio St.3d 158, 161 (1994), citing *State v. O'Brien*, 34 Ohio St.3d 7 (1987).

{¶20} A speedy trial claim involves a mixed question of law and fact for purposes of appellate review. *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, ¶ 11 (3d Dist.), citing *State v. High*, 143 Ohio App.3d 232, 242 (7th

Dist.2001). Accordingly, a reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence but will independently review whether the trial court correctly applied the law to the facts of the case. *Master*s at ¶ 11.

{¶21} The record indicates that Hansen was arrested on April 10, 2012 and held in jail until the trial commenced on July 16, 2012, which is 97 days—seven days beyond the 90 days permitted under R.C. 2945.71(C)(2), (E). (Doc. No. 1); (July 17, 2012 Tr. at 19). The defense filed a motion requesting a bill of particulars and discovery on May 16, 2012, which was prior to the indictment date of May 23, 2012. (Doc. Nos. 2-3). The trial court tolled time for the bill of particulars and discovery requests from May 23, 2012, the date of indictment, until June 6, 2012 when the State filed its responses, for a total of 14 days. (Doc. Nos. 8-9). Therefore, under the trial court's calculations, Hansen was brought to trial in 83 days, well within the time required under statute.

{¶22} Hansen argues that the motion she filed on May 16, 2012 for a bill of particulars and discovery should not have tolled time since it was prematurely filed under Crim.R. 16(M). That provision provides that "[a] defendant shall make his demand for discovery *within* twenty-one days after arraignment or seven days before the date of trial, whichever is earlier, or at such reasonable time later as the court may permit." (Emphasis added). Nothing in Crim.R. 16(M)

technically prohibits defense counsel from filing a discovery motion prior to arraignment. The State still responded to the motion, which delayed the trial. R.C. 2945.72(E). The discovery motion/request for bill of particulars became a pending motion when the indictment was filed. Therefore, the trial court did not err by tolling days subsequent to the date of indictment for the pending discovery motion/request for bill of particulars. Consequently, Hansen was brought to trial within the 90-day deadline imposed by R.C. 2945.71(C)(2), (E), and the trial court did not err in denying the motion for discharge.[1]

{¶23} Hansen's fourth assignment of error is, therefore, overruled.

### Assignment of Error No. I

**The trial court erred when it denied Appellant's Motion in Limine to prohibit the instruction [sic] of additional phone calls made by Appellant to the Court.**

### Assignment of Error No. II

**The trial court erred when it denied Appellant's Motion in Limine to prohibit the introduction of the recording of Appellant at the time of her arrest.**

{¶24} In her first and second assignments of error, Hansen argues that the trial court erred by denying her motions in limine to exclude from evidence a taped recording of her phone call to Lt. Michelle Craig and a taped recording of statements she made during her arrest. Hansen argues that the statements were

---

[1] We note that time was also tolled for *at least* two more days for Hansen's motions in limine filed on July 11 and 13, 2012. (Doc. Nos. 26, 30). R.C. 2945.72(E); *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 20-27.

irrelevant since she was not charged for any statements she made to Lt. Craig or statements she made during arrest. She also argues that identity was not at issue since she was willing to stipulate to that at trial. Hansen further argues that admitting the recordings negatively influenced the jury's feelings against her.

{¶25} A motion in limine is a request for the court to limit or exclude certain evidence which the movant believes is improper, which is made in advance of the actual presentation of the evidence and usually prior to trial. *State v. Black*, 172 Ohio App.3d 716, 2007-Ohio-3133, ¶ 11 (3d Dist.), citing *State v. Winston*, 71 Ohio App.3d 154, 158 (2d Dist.). "The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper." *Black* at ¶ 11. Since a trial court's decision on a motion in limine is a ruling to exclude or admit evidence, we review the trial court's decision for an abuse of discretion that amounted to prejudicial error. *Id.*, citing *State v. Yohey*, 3d Dist. No. 9-95-46 (Mar. 18, 1996), citing *State v. Graham*, 58 Ohio St.2d 350 (1979), and *State v. Lundy*, 41 Ohio App.3d 163 (1st Dist.1987). An abuse of discretion constitutes more than an error of judgment; rather, it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶26} The trial court ruled on the motions in limine just prior to the start of the trial. Defense counsel represented that the motions in limine sought to exclude

statements Hansen made to the "Acting Chief" of the Tiffin Police Department, confirming that she made the initial bomb threat to the Tiffin Municipal Court and Hansen's statement "I don't care I will do it." (July 17, 2012 Tr. at 8). Defense counsel also indicated that Hansen called the police department a second time confirming that she, in fact, made the threats and that she was going to go through with the threat. (*Id*. at 8-9). Finally, defense counsel indicated that the prosecution also intended to introduce six minutes of a recording from Hansen's arrest, though he was not sure for what purpose. (*Id*. at 9). Defense counsel argued that the statements were irrelevant since Hansen was only charged for statements she made during the 10:30 a.m. phone call to the courthouse, not any subsequent statements. (*Id*.). Defense counsel argued that the statements were highly prejudicial and harmful to his client. (*Id*.).

{¶27} The State, on the other hand, argued that the subsequent statements were admissible to show identity and motive or purpose. (*Id*. at 9-10). The State argued that the subsequent statements were really just a continuation of the initial threat, and Hansen stated therein "[i]f something doesn't get done, I need my boyfriend out of jail today." (*Id*. at 10). The State also pointed out that it was not required to stipulate to identity, and if even with the stipulation, it still had the burden of proving identity. (*Id*.).

**{¶28}** After hearing the aforementioned, the trial court conditionally denied the motions in limine subject to hearing more testimony later in trial. (*Id.* at 11). We cannot conclude that the trial court abused its discretion by denying the motions in limine. From what was represented to the trial court, the statements were admissible for purposes of proving identity, motive or purpose, and were, otherwise, admissions by Hansen. Hansen's statements were also relevant to show that she "cause[d] a reasonable expectation or fear of the imminent commission of the specified offense" as charged in the indictment. R.C. 2909.23(A)(2). The fact that Hansen wanted to stipulate to identity does not mean that the State had to accept the stipulation, nor does it mean that the trial court was required to exclude this otherwise probative evidence. *State v. Collins*, 4th Dist. No. 1021, *2-3 (Apr. 21, 1980); *State v. Wilson*, 9th Dist. No. 92CA005396, *25 (Oct. 12, 1994). Therefore, the trial court did not abuse its discretion by denying the motions in limine.

**{¶29}** Hansen's first and second assignments of error are, therefore, overruled.

### Assignment of Error No. III

**The trial court erred when it granted the Motion to Quash the Appellant's supoena [sic] duces tecum whereby she requested the security plan for the Tiffin Municipal Court adopted under Rule of Superintendence 9(A).**

{¶30} In her third assignment of error, Hansen argues that the trial court erred by granting the motion to quash her subpoena duces tecum seeking the Tiffin Municipal Court security plan.

{¶31} A subpoena may be used to command a person to produce in court books, papers, documents, and other objects. Crim.R. 17(C). However, the trial court upon motion of a party may quash or modify the subpoena if compliance would be unreasonable or oppressive. *Id*. An appellate court applies an abuse of discretion standard when reviewing a trial court's decision to quash a subpoena. *State v. Blair*, 3d Dist. No. 9-12-14, 2013-Ohio-646, ¶ 44, citations omitted.

{¶32} Upon review we cannot conclude that the trial court abused its discretion by granting the motion to quash. To begin with, the security plan is a sensitive document whose contents should be safeguarded. Hansen argues that the court security plan was relevant because court personnel's actions with respect to the plan show how serious they thought Hansen's threats were. The evidence presented at trial, however, demonstrated that the security plan was in draft form and had not been formally adopted by the court. (July 16-17, 2012 Tr. at 157-158). In fact, when defense counsel asked the deputy clerk who received the threatening phone call about the court security plan, she indicated that she was not aware of such a plan. (*Id*. at 134). Beyond that, the trial court permitted defense counsel to review the security plan in chambers and to question court personnel

and Judge Repp about the security plan. (*Id.* at 15-17, 102-109, 134, 157-158, 174-175). Defense counsel was able to examine the seriousness of Hansen's threats through cross-examination and the fact that the court security plan was not admissible in evidence did not hinder this ability.

{¶33} Hansen's third assignment of error is, therefore, overruled.

## Assignment of Error No. VIII

**The trial court erred when it denied Appellant's Motion for Acquittal pursuant to Criminal Rule 29.**

## Assignment of Error No. VI

**The conviction in the trial court should be reversed because it is against the manifest weight of the evidence and because evidence supporting it was insufficient as a matter of law to prove the conviction beyond a reasonable doubt.**

{¶34} In her eighth assignment of error, Hansen argues that the trial court erred in denying her Crim.R. 29(A) motion for acquittal. In particular, Hansen argues that there was no evidence that anyone actually took her threat seriously; and therefore, there was insufficient evidence that she created a reasonable expectation or fear of the imminent commission of the offense. In her sixth assignment of error, Hansen argues that her conviction was against the manifest weight of the evidence and not supported by sufficient evidence for the same reason cited in her eighth assignment of error.

{¶35} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus. The *Bridgeman* standard "must be viewed in light of the sufficiency of evidence test[.]" *State v. Foster*, 3d Dist. No. 13-97-09, *2 (Sept. 17, 1997).

{¶36} When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

{¶37} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must still allow the trier of fact appropriate

discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶38} Laura Bouillon, a deputy clerk at the Tiffin Municipal Court, testified that her primary responsibilities include answering the phones, waiting on the public, and docketing court proceedings. (July 16-17, 2012 Tr. at 119). Bouillon testified that, around 10:30 a.m. on April 10, 2012, she received a threatening phone call at the court. (*Id*. at 119-120, 123). Bouillon testified that the individual on the phone first asked her whether Casey Gowitzka had to go to jail, and she informed the caller that he was sentenced to 10 days in jail. (*Id*. at 120-121). According to Bouillon, the caller became agitated and stated, "No, that's not okay. Do you know how much school costs? No." (*Id*.). Bouillon asked the caller if she had any more questions regarding the case, and the caller said "the officer was stupid." (*Id*.). At that point, Bouillon again asked the caller if she had any other questions about the case, and the caller stated, "No. I'm just gonna come and blow the courthouse up" and hung up the phone. (*Id*. at 121-122). Bouillon testified that, after the caller made the threat, she informed her supervisor because she thought it was a serious allegation. (*Id*. at 122-123). Bouillon testified that later that day someone from the Tiffin Police Department questioned her about the phone call. (*Id*. at 123).

{¶39} On cross-examination, Bouillon testified that Hansen sounded agitated on the phone about some financial issues related to Gowitzka going to jail. (*Id*. at 124). She testified that she executed a written statement concerning the phone call within a half-hour after it occurred. (*Id*.). Bouillon testified that Hansen did not make any conditional threats, did not indicate there was a bomb in the building, and did not indicate what the bomb looked like. (*Id*. at 127-128). Bouillon further testified that she informed her supervisor, Victoria Comer, immediately after the caller hung up. (*Id*. at 128). She testified that she continued her normal duties after informing her supervisor, that a court hearing took place shortly after the phone call, and that she did not speak to Judge Repp about the phone call. (*Id*. at 129-130). Bouillon identified defendant's exhibit A as a certified copy of a municipal court journal entry in Abby McClelland's case, which was time stamped 10:48 a.m. on April 10, 2012. (*Id*. at 131-132). Bouillon testified that, after the bomb threat, court continued as normal, was not evacuated or closed, and she did not personally leave or ask to leave the court. (*Id*. at 133). Bouillon testified that, if she believed there was a bomb in the building about to explode, she would have left the building. (*Id*.). She testified that she was not aware of any court security plan, and that if something like this comes up, they usually contact the police department, which is downstairs in the same building. (*Id*. at 134). Bouillon identified defendant's exhibit B as a copy of the court

docket for April 10, 2012, which reflected a total of 33 cases for the day, which the court heard even after the bomb threat. (*Id*. at 134-135). On re-direct examination, Bouillon testified that she had never received a bomb threat before this one, and she does not investigate the threats; but instead, she calls the police. (*Id*. at 137). She testified that she spoke with Officer Bryan Bryant about the incident, and the police department searched the building for explosives. (*Id*. at 138).

{¶40} Judge Mark E. Repp of the Tiffin Municipal Court testified that, on the morning of April 10, 2012, he was presiding over arraignments. (*Id*. at 140-141). Judge Repp testified that during one of the arraignments he imposed a jail sentence upon Gowitzka, and that later that morning the court clerk, Comer, informed him that they received a phone call threatening to blow up the courthouse. (*Id*. at 141-142). Judge Repp testified that it was the first bomb threat the court had received during his ten years of service on the bench. (*Id*. at 142). He testified that he did not feel qualified to determine whether the threat was imminent or not, so he directed Comer to inform the Tiffin Police Department. (*Id*.). Judge Repp further testified that Lt. Craig and a couple uniformed officers searched the courthouse and ascertained that there was no apparent threat, so he continued court proceedings. (*Id*. at 143).

{¶41} On cross-examination, Judge Repp testified that the bomb threat was received sometime between 10:30 a.m. to 11:00 a.m., after arraignments were finished. (*Id*. at 144). Judge Repp identified defendant's exhibit A as a journal entry for Ms. McClelland in an OVI case, which was time-stamped 10:48 a.m. on April 10, 2012. (*Id*. at 144-145). Judge Repp testified that he could not recall the exact time of the bomb threat; however, he recalled he was on the bench when Comer informed him about the phone call. (*Id*. at 145-146). He testified that, other than the delay for the police search, court proceedings continued throughout the rest of the day. (*Id*. at 154). Judge Repp testified that he did not evacuate or close the court after the bomb threat, which he had the authority to do. (*Id*.). He testified that he was not aware of any other governmental entities in the building that evacuated or closed. (*Id*. at 156). Judge Repp further testified that he has been working on a court security plan, which addresses bomb threats; however, the plan is only in draft form. (*Id*. at 157). Judge Repp testified that court was delayed approximately 10 minutes for the police to check for explosives. (*Id*. at 159).

{¶42} Tiffin Police Officer Bryan Bryant testified that he had training and experience with identifying explosive devices from his time in the military and in the police department. (*Id*. at 162-163). Officer Bryant testified that he received a dispatch to respond to the police department to investigate a bomb threat against

the Tiffin Municipal Court.  (*Id*. at 164).  He testified that, when he returned to the police department, the dispatcher informed him that there had been a bomb threat against the court, and Lieutenant Craig, also seated in the dispatch, was on the phone talking with the person who made the threat.  (*Id*.). Bryant testified that, after Lt. Craig finished the phone conversation, she asked him to speak with the deputy clerk who spoke with the person making the threat.  (*Id*.).  Bryant testified that Lt Craig did not inform him of the caller's identity but informed him that it was a girl calling from outside of Tiffin inquiring about what happened to a boyfriend or husband.  (*Id*. at 165).  Bryant testified that he then spoke with Laura Bouillon who informed him of the nature the threats.  (*Id*.).  He testified that, thereafter, Lt. Craig and he informed Judge Repp that they were going to follow protocol and search room by room for any suspicious objects, bags, or packages. (*Id*. at 166).   Bryant testified that it is easier to check for such items when the people who are familiar with the building are present so they can identify their property as opposed to a suspicious item.  (*Id*. at 167).  Bryant testified that the search took about 10 to 15 minutes, and, after conducting the search, he was satisfied that there was no explosive devices in the court.  (*Id*. at 167-168).  Bryant testified that he also searched the front hall, the mayor's office, the city administrator's office, and the police department as an extra precaution.  (*Id*. at 168).

{¶43} On cross-examination, Bryant testified that the court remained open, and he did not notify any other law enforcement agencies since no device was found. (*Id*. at 168-169). He testified that the police department and the courthouse are housed in the same building. (*Id*. at 169). Bryant testified that no other department housed in the building was evacuated, though he informed each department of the threat. (*Id*. at 170). On re-direct, Bryant testified that there would be no point to conducting a search if he did not believe there could be an explosive device. (*Id*.). On re-cross, Bryant testified that the search was part of their protocol. (*Id*. at 171). As a result of a juror question, Bryant also explained that a government building could not be shut down on every bomb threat; rather, their protocol is to do a search first to determine if there are any suspicious packages. (*Id*. at 171-172). Bryant testified, however, that in the event a bomb is going to go off imminently, they do not have the ability to do a search. (*Id*. at 173).

{¶44} Tiffin Police Department Lieutenant Michelle Craig testified that, on April 10, 2012, she was the Acting Chief of Police and working the day shift. (*Id*. at 176-178). Lt. Craig testified that the dispatcher informed her that they were sending Officer Bryant to the Tiffin Municipal Court because a female subject called the court, was upset about her boyfriend being incarcerated, and made a bomb threat. (*Id*. at 178-179). She testified that shortly thereafter the dispatcher

informed her that they had a female on the phone complaining about the police officer's actions that past Friday. (*Id*. at 179). Lt. Craig testified that, after listening to the conversation, it became clear that the female caller was the same person who made the bomb threat. (*Id*.). Lt. Craig identified State's Ex. 1 as a recording of the phone conversation, which was played for the jury. (*Id*. at 180-181). Lt. Craig testified that, after hearing the conversation, she went up to the courtroom and asked Judge Repp if they could do a check of the area for explosives. (*Id*. at 182). She testified that they do not make a call to evacuate unless and until they find a suspicious device. (*Id*.). Lt. Craig testified that they did not find any device, but they did advise the city administrator's office, the mayor's office, and the fire chief of the bomb threat. (*Id*. at 182-183). Lt. Craig testified that the precautions they took were a direct result of the bomb threat, and they took those precautions immediately after Hansen ended the phone call with the dispatcher. (*Id*. at 183).

{¶45} Lt. Craig testified that her secondary responsibility after conducting the search of the court was to ensure Hansen's safety since she made a threat of killing herself during her conversation with the dispatcher. (*Id*. at 184). To that end, she determined from the traffic stop report that Hansen lived in Bellevue and contacted the Bellevue Police Department to see if they would check on Hansen, which they agreed to do. (*Id*. at 184). Lt. Craig also informed the Bellevue Police

Department that she would put together an affidavit to present to a judge in Bellevue to search Hansen's residence to make sure there were no explosive devices or materials for bombs in the residence. (*Id*. at 184-185). Lt. Craig testified that, about 30 to 45 minutes after talking with the Bellevue Police Department, Hansen called the Tiffin Police Department a second time irate that they sent the Bellevue police to her house. (*Id*. at 185). Lt. Craig testified that this phone call was also recorded, and she identified State's Ex. 2 as a recording of the same, which was played for the jury. (*Id*. at 186-188). Lt. Craig testified that after that conversation, she worked with the Bellevue Police Department to obtain a search warrant to search Hansen's residence. (*Id*. at 188). She further testified that she took this precaution, along with searching the courthouse for explosives, in light of Hansen's "erratic behavior," Hansen's threats toward others and herself, and because Hansen did not back down from her initial threat. (*Id*. at 188-189). On cross-examination, Lt. Craig testified that she never asked Hansen the location of the bomb, how it would be detonated, what it would look like, or if Hansen was familiar with the courthouse building. (*Id*. at 190-191). Lt. Craig testified that she never called the ATF, FBI, or bomb squad nor evacuated the courthouse since they did not locate any explosive device. (*Id*. at 192-194). She testified that they did not do any additional searches after Hansen called the police department a second time. (*Id*. at 196).

{¶46} Tiffin Police Detective David Horn testified that Lt. Craig informed him of the threat made to the Tiffin Municipal Court, and thereafter, he identified the subject and typed up a complaint and arrest warrant. (*Id.* at 202-204). Detective Horn testified that they obtained a search warrant because the threats were taken seriously, though they did not find any materials that could be used for explosives in Hansen's residence. (*Id.* at 204). Detective Horn testified that Hansen was not home when they entered her residence, though she returned while they were executing the search warrant so they arrested her at that time. (*Id.* at 204-205). Detective Horn testified that Hansen was very upset and advised that she had called the court and had everything already worked out. (*Id.* at 205). Detective Horn testified that the arrest was recorded and identified State's Ex. 3 as a copy of the same, which was played for the jury. (*Id.* at 205-206). He further testified that, during the arrest, Hansen indicated that she shared another residence with her grandmother, so they obtained an additional search warrant for that residence. (*Id.* at 209). Detective Horn testified that none of the search warrants produced any explosive devices. (*Id.* at 210). He identified the defendant as the individual he arrested on April 10, 2012. (*Id.*). On cross-examination, Detective Horn testified that he was not involved in the search of the courthouse. (*Id.* at 211-212). He testified that he did not call the ATF, did not cord off areas around

the court, did not tell people to leave the building, and did not leave the building himself. (*Id*. at 212-213).

{¶47} Thereafter, the State and defense both rested. (*Id*. at 244). The defense made a motion for acquittal under Crim.R. 29(A), which the trial court denied, and the jury returned a guilty verdict. (*Id*. at 245-246); (Doc. No. 41).

{¶48} Upon review of the foregoing testimony and evidence admitted at trial, we conclude that Hansen's conviction was supported by sufficient evidence and not against the manifest weight of the evidence.

{¶49} Hansen was convicted on one count of making a terroristic threat in violation of R.C. 2909.23(A)(1)(c), (2), which provides:

(A) No person shall threaten to commit or threaten to cause to be committed a specified offense when both of the following apply:

(1) The person makes the threat with purpose to * * * (c) [a]ffect the conduct of any government by the threat or by the specified offense.

* * *

(2) As a result of the threat, the person causes a reasonable expectation or fear of the imminent commission of the specified offense.

{¶50} Hansen called the Tiffin Municipal Court and became irate after learning that Judge Repp ordered her boyfriend to serve ten days in jail, which would negatively impact her ability to attend school. Hansen's subsequent phone calls to the Tiffin Police Department demonstrated her purpose to affect the conduct of the municipal court, a governmental entity; namely, to secure the release of her boyfriend from jail and her car from the impound lot. Hansen stated that she needed her car to attend school and her boyfriend needed to make repairs to the car so she could drive it to school. Hansen's subsequent conversations with law enforcement caused a reasonable expectation or fear that Hansen would carry out the bomb threat. Hansen never backed down from her initial threats, even when given the opportunity to do so, and even insisted that she would carry out the bomb threat if her boyfriend was not released from jail. Hansen stated she was bipolar and schizophrenic and that she did not care what would happen to her since the police and the courts had already ruined her life. A rational juror could have concluded that Hansen created a reasonable expectation or fear of the commission of the bombing in light of Hansen's comments to law enforcement and her belligerent behavior.

{¶51} Finally, Hansen argues that her conviction is against the manifest weight of the evidence because there was not a reasonable expectation or fear that she would carry out her threat. We disagree. During Hansen's phone calls to the

Tiffin Police Department, she repeatedly made statements indicative of her intent to carry out the bomb threat. She stated multiple times in expletives that she would "do it" and did not care what happened to her since her life was already ruined. Hansen stated that she was having a mental breakdown and "losing it" during these phone conversations, even threatening harm against herself. In light of the severity of Hansen's statements and actions during these phone conversations, we cannot conclude that the jury lost its way finding that Hansen created a reasonable expectation or fear of the commission of the offense.

{¶52} Hansen's eighth and sixth assignments of error are, therefore, overruled.

### Assignment of Error No. V

**Tawney N. Hansen was deprived of her rights to effective assistance of counsel by her counsel, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Ten of the Ohio Constitution, which severely prejudiced the rights of Appellant and did not further the administration of justice.**

{¶53} In her fifth assignment of error, Hansen argues that trial counsel was ineffective during voir dire when he failed to inquire if any potential jurors were related to law enforcement. Hansen argues that a juror, Ms. Vallery, identified herself as being married to "Shawn," who is Detective Shawn Vallery of the Tiffin Police Department. Detective Vallery, according to Hansen, works directly with

two of the State's witnesses, Detective Horn, the arresting officer, and Lt. Michelle Craig, the acting police chief.

**{¶54}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

**{¶55}** Hansen has failed to demonstrate ineffective assistance of counsel. Ms. Vallery introduced herself during voir dire as follows: "I'm Lori. I work at Tiffin Mercy and I'm a Tiffin resident. I have three children and I am married to Shawn." (July 16-17, 2012 Tr. at 55). There is no indication in the record that Shawn Vallery is a Tiffin Police Detective, or that Lori is married to the same "Shawn" who is allegedly a detective. Besides that, how an attorney conducts voir dire is a matter of trial strategy, which a reviewing court should not "second-guess." *State v. Reynolds*, 3d Dist. No. 1-02-70, 2003-Ohio-2067, ¶ 20-21, citations omitted (trial counsel was not ineffective for failing to exercise peremptory challenges on two jurors who were related to law enforcement officers). All the prospective jurors were asked whether they had a personal interest in the outcome of the case, and no one responded affirmatively. (July 16-17, 2012 Tr. at 37). All of the prospective jurors were also asked if they could not

base their decision on the facts and the law, and no one responded affirmatively. (*Id.* at 40). For these reasons, Hansen has failed to demonstrate ineffective assistance of trial counsel.

{¶56} Hansen's fifth assignment of error is, therefore, overruled.

**Assignment of Error No. VII**

**The trial court erred when it denied Appellant's Motion for Mistrial.**

{¶57} In her seventh assignment of error, Hansen argues that the trial court erred by denying her motion for mistrial. Hansen argues she was entitled to a mistrial because the trial court allowed the State to play recordings of her phone call with Lt. Craig and her arrest to the jury. Hansen argues that these recordings were irrelevant since they occurred after the statements giving rise to the crime and prejudicial since they made her look mentally unstable.

{¶58} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). Whether to grant a mistrial is within the sound discretion of the trial court. *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 42, citing *State v. Glover*, 35 Ohio St.3d 18, 19 (1988).

{¶59} At the end of the trial, Hansen made a motion for a mistrial after the trial court allowed the recordings of her phone conversation with Lt. Craig and her arrest to be played for the jury. (July 16-17, 2012 Tr. at 232). Counsel argued

that the phone conversation with Lt. Craig was irrelevant since it occurred after the allegedly threatening statements were made to the municipal court. (*Id*. at 232-233). Counsel argued that any subsequent threats made by Hansen were separate, unindicted offenses for which she could not be convicted. (*Id*. at 236). Counsel argued that the recording of Hansen's arrest was "brought into evidence to basically make her look like a crazy schizophrenic, psychotic bitch and, therefore, should be convicted." (*Id*. at 233).

{¶60} Upon review, we conclude that the trial court did not abuse its discretion by denying the motion for a mistrial. We have already found that State's exhibits one and two, recordings of Hansen's phone calls to the Tiffin Police Department, were relevant to show identity, purpose or motive, and an essential element of the offense—that Hansen "cause[d] a reasonable expectation or fear of the imminent commission of the specified offense." R.C. 2909.23(A)(2). Therefore, the trial court did not abuse its discretion by denying the motion for mistrial based on the admission of these exhibits.

{¶61} State's exhibit three was a recording of statements made by Hansen during her arrest, including admissions to making the threats to the municipal court. While many of Hansen's statements and her behavior were potentially prejudicial, the trial court specifically instructed the jury that State's exhibit three "may only be used for purposes of determining the identity of the individual that

-29-

committed the alleged offense and for * * * any incriminating statements that may have been regarding the threat against the Tiffin Municipal Court[.]" (July 16-17, 2012 Tr. at 230-231). The trial court further instructed that "[a]ny other statements made in the tape recording should be disregarded in this case." (*Id.* at 231); (*Id.* at 247, 251-252). The jury is presumed to have followed the instructions provided by the trial court. *State v. Twyford*, 94 Ohio St.3d 340, 356 (2002), citing *State v. Loza*, 71 Ohio St.3d 61, 75 (1994). Accordingly, we are not persuaded that Hansen was deprived a fair trial as a result of the admission of State's exhibit three, and the trial court did not abuse its discretion by denying her motion for a mistrial.

**{¶62}** Hansen's seventh assignment of error is, therefore, overruled.

**{¶63}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**